Fuld, J.
Six years after an apartment house had been completed and turned over to the owner, this action was brought against the architects who designed the structure and the builder who constructed it, as well as the owner, to recover for injuries suffered by a child of a tenant when he fell off a stoop or porch. We are here concerned with the sufficiency of plaintiffs’ complaint and defendant owner’s third-party complaint against the builder and architects.
William Inman, an infant, lived with his parents in an apartment leased by them from the Binghamton Housing Authority. When he was two years old he fell off the stoop, a built-up area at the rear entranceway to the apartment, one “ step ” above the concrete pavement, and was injured.[1] Two separate suits were brought on behalf of the child, one against the Housing Authority and the other against the architects, defendants Lacey, and the builder, defendant Vincent J. Smith, Inc. In the action in.which it was named as defendant, the Housing-Authority served a third-party complaint against the builder and the architects, asserting- a right to indemnification in the event of a recovery against it.
The Inmans’ complaint against the architects and builder alleges that they were tenants residing in a first-floor apartment in Saratoga Terrace, a public housing project in the City of Binghamton, owned and operated by the Binghamton Housing Authority; that the building had been erected in 1948 by the defendant Smith following the ‘[1] plan and design ’ ’ of the defendants Lacey; that on May 24, 1954, while the two-year-old plaintiff was attempting- to enter his apartment, he fell *143 from the stoop, sustaining severe injuries; that the architects and builder, the former in designing and planning and the latter in proceeding with construction, created a ‘[1] hazardous and extremely dangerous condition,” in the stoop area, “ well-knowing that * * * [it] would be used by infant children ”. The danger created, according to the complaint, stemmed from three alleged defects: first, and this is the crux of the asserted negligence, the absence of “ a protective railing, guard, or any device whatever to protect the occupants ” and other persons “ from falling ” off the stoop; second, the fact that the rear door opened outward to the porch “in such manner” that those on the porch “ are required to back precariously close to the edge”; and, finally, that the “step leading from [the] porch or stoop to the sidewalk ” was “grossly inadequate ” in that it was in the center of the porch and did not extend along its entire length.
The third-party complaint, brought by the Housing Authority against the architects and builder, sets forth two causes of action against each, one founded on a common-law right to indemnification and the other upon provisions of contract.
Upon motions by the builder and the architects to dismiss the third-party complaint, the court at Special Term dismissed the causes of action not based on contract. Some time later, when they moved to dismiss the Inmans’ complaint against them, the court, holding that no actionable negligence was alleged, granted the motion and dismissed the complaint.
Appeals from the various orders and judgments subsequently entered in each action were consolidated by stipulation, and the Appellate Division, reversing in part, decided that the Inmans ’ complaint stated a cause of action within “ The doctrine announced in the case of MacPherson v. Buick Motor Co. (217 N. Y. 382) ” and that, except for the contract cause of action against the architects, which it dismissed, the third-party complaint presented issues of fact requiring trial. The Appellate Division granted permission to appeal and certified five questions of law.
Putting aside for the moment the third-party complaint and addressing ourselves solely to the suit brought by the Inmans, the questions presented are, first, do the principles underlying the rule announced in MacPherson v. Buick Motor Co. (supra, 217 N. Y. 382)—holding a manufacturer of an inherently dangerous chattel, defectively made, liable for injuries to *144 remote users — also apply to those who plan and put up structures on real property and, second, if they do, do the allegations in the present complaint establish the existence of liability.
Although this court has not had occasion to cite MacPherson v. Buick Motor Co. (supra, 217 N. Y. 382) in cases dealing with structures erected upon real property, it is to be noted that this is not the first case in which we considered whether a builder or a building contractor may be held accountable in negligence for injuries to a third person not in privity with him. (See Adams v. White Constr. Co., 299 N. Y. 641, revg. 274 App. Div. 1072.) We decided in favor of responsibility, our decision therein, as well as that of the Appellate Division in this case, stemming from an awareness that “ there is no visible reason for any distinction between the liability of one who supplies a chattel and one who erects a structure ”. (Prosser on Torts [2d ed., 1955], § 85, p. 517.) And a number of other courts, likewise encountering nothing more persuasive than the arguments that had proved unavailing when advanced to protect the manufacturers of chattels from liability, have reached the same conclusion. (See, e.g., Hanna v. Fletcher, 231 F. 2d 469, 472, cert. denied 351 U. S. 989; Moran v. Pittsburgh-Des Moines Steel Co., 166 F. 2d 908, 916; Hale v. Depaoli, 33 Cal. 2d 228, 230-232; Del Gaudio v. Ingerson, 142 Conn. 564, 568-569; Hunter v. Quality Homes, 45 Del. 100, 105-106; Colbert v. Holland Furnace Co., 333 Ill. 78; Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 34-37; Berg v. Otis Elevator Co., 64 Utah 518, 525; Colton v. Foulkes, 259 Wis. 142, 146-147; see, also, 2 Restatement, Torts, § 385, p. 1030; 2 Harper and James on Law of Torts [1956], § 28.10, pp. 1556-1557; Note, 13 A. L. R. 2d 191.) As the Pennsylvania high court declared, “ there is no reason to believe that the law governing liability * * * should be, or is, in any way different where real structures are involved instead of chattels. There is no logical basis for such a distinction * * *. The principle inherent in the MacPherson v. Buick Motor Co. case and those that have followed it * * cannot be made to depend upon the merely technical distinction between a chattel and a structure built upon the land.” (Foley v. Pittsburgh-Des Moines Co., supra, 363 Pa. 1, 34-35.)
While, therefore, we conclude that the “ principle inherent ” in the MacPherson doctrine applies to determine the liability *145 of architects or builders for their handiwork, it does not follow that the complaint against the defendants Lacey and the defendant Smith necessarily states a valid cause of action. It must be further examined to ascertain whether it also alleges the other elements deemed essential under MacPherson-Buick.
The cases establish that the manufacturer of a machine or other article, ‘‘ dangerous because of the way in which it functions, and patently so, owes to * # * [remote users] a duty merely to make it free from latent defects and concealed dangers.” (Campo v. Scofield, 301 N. Y. 468, 471.) “ We have not yet reached the state,” we wrote in the Campo case (supra, pp. 472-473), “where a manufacturer is under the duty of making a machine accident proof or foolproof. * * * Suffice it to note that, in cases dealing with a manufacturer’s liability for injuries to remote users, the stress has always been upon the duty of guarding against hidden defects and of giving notice of concealed dangers. [Cases cited.] In point of fact, several of the cases actually declare that a duty is owed, a liability imposed, only if the defect or danger be not ‘ known ’ or ‘ patent ’ or discoverable ‘ by a reasonable inspection ’. ’ ’ And, since the presence of a latent defect or a danger not generally known is precedent to the manufacturer’s liability, the absence of such a recital in the complaint is fatal to the existence of a cause of action.
Examination of the pleading before us discloses its invalidity. It contains no allegation of any latent defect or concealed danger. It simply ■ complains of (1) the absence of “ a protective railing, guard or any device ”, (2) the arc made by the door when opened and (3) the fact that the step did not extend the full length of the stoop, all patently obvious defects, if, indeed, they are defects at all. From none of these recitals may it be said that the architects or the builder violated a duty owed to users of the stoop. Entirely lacking, to paraphrase what we said in the Campo case (supra, 301 N. Y. 468, 471), is any suggestion that the structure possessed a latent defect or an unknown danger and, in the very nature of things, entirely lacking is any recital that the absence of a railing or other device was unknown or undiscoverable. As we have already indicated, such omissions are fatal.
Analysis of the decisions in which a remote user has recovered in tort, be it from a manufacturer, supplier or contractor, *146 amply demonstrates how different the instant case is. Here, we have nothing like the sudden collapse of an imperfectly constructed scaffold, a defective automobile wheel or a faultily erected concrete ceiling (Devlin v. Smith, 89 N. Y. 470; MacPherson v. Buick Motor Co., supra, 217 N. Y. 382; Adams v. White Constr. Co., supra, 299 N. Y. 641); nothing like the breaking of a poorly made handle on a coffee urn (Hoenig v. Central Stamping Co., 273 N. Y. 485); nothing like the explosion of a defectively manufactured soda bottle, aerated water bottle or coffee urn (Smith v. Peerless Glass Co., 259 N. Y. 292; Torgesen v. Schultz, 192 N. Y. 156; Statler v. Ray Mfg. Co., 195 N. Y. 478); nothing like the explosion of an electric transformer, improperly packed (Rosebrock v. General Elec. Co., 236 N. Y. 227). In short, in the present case, we have nothing that is related to, or stems from, the existence of a latent fault or hidden danger in either design or construction. The complaint reveals a one-step stoop, two steps high along a part of its length, with no railing or other protective device around it, from which an apparently unattended child fell. Whatever the defect, it may not be said to have been latent, and, whatever the danger, it certainly was not hidden. That being so, it is evident that the requirements of the MacPherson-Buick rule have not been met; the complaint of the Inmans against the architects and the builder is without legal basis and was properly dismissed at Special Term.
We turn, then, to the third-party complaint, and, first, to the question of the Authority’s right to recover over against the architects and the builder on the ground that those defendants were “actively negligent,” while the Authority was only “ passively ” so. Since, however, the architects and the builder breached no duty and were, therefore, guilty of no negligence, the Authority’s claim to recover over against them (founded, as noted, on their assertedly “ active or primary negligence ”) may not prevail. There is still another basis for this conclusion. According to the complaint of the Inmans against the Authority, the injuries alleged were owing, as Special Term aptly summarized it, to ‘ ‘ negligence * * * in the construction, maintenance and continuance of an allegedly known defective condition of the premises ”. Taking the allegations of the complaint to be true, as we must at this juncture, the Authority is cast “in the role of an active .tort-feasor, and, as such, is *147 not in a position to compel * * * indemnification * * * absent an agreement so to do.” (Dick v. Sunbright Steam Laundry Corp., 307 N. Y. 422, 425; see, also, Middleton v. City of New York, 300 N. Y. 732.)
The cause of action against the architects, grounded upon contract, was dismissed and the Authority has not appealed from that determination. Consequently, the sole question that remains concerns the liability of the builder, under its agreement with the Authority, to indemnify the latter if it is held liable to the Inmans.
Section 11 of the contract, entitled ‘1 Risks Assumed by the Contractor ”, provides that “ The Contractor shall be the insurer of the Authority * * * and hold [it] harmless against # * * (b) The risk of causing injuries to persons, wrongful death, and property damages, direct or consequential, to the Authority * * * arising out of or in connection with the performance of the Work, whether sustained before or after Final Payment. * * * (c) The risk of liability or losses suffered by, or claims and demands, just or unjust made by, third persons, whether made before or after Final Payment, against the Authority * * * arising or alleged to arise out of the performance of the Work ”.
Words in a contract are to be construed in the light of the “ apparent object of the parties ” (Gillet v. Bank of America, 160 N. Y. 549, 555; see, also, Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36, 40-41) and, although they “ would seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view.” (Robertson v. Ongley Elec. Co., 146 N. Y. 20, 23.) As so read, the contract here involved may not reasonably be construed to require the builder to indemnify the Authority for an accident that occurred some six years after the job had been completed and accepted and which did not arise from any defect in workmanship or in any material used. Were we here to hold that a court or jury could find — as the Appellate Division indicated in sustaining the contract cause of action — that the agreement requires the defendant Smith to indemnify the Authority for damages it may be called upon to pay to the Inmans, we would actually be disregarding its explicit provision limiting Smith’s obligation, as insurer, to injuries “ arising out of or in connection with the * * * Work”. *148 The accident for which the plaintiffs brought this suit occurred six years after Smith had completed the building and had turned it over to the owner, but it could just as easily have been 15 or 25 years. As we have already observed, the contract may not reasonably be read to place upon the builder a burden which he did not expressly assume and which it is inconceivable he would have accepted.
Moreover, and in any event, the agreement " will not be construed to indemnify a person [here, the Authority] against his own negligence unless such intention is expressed in unequivocal terms.” (Thompson-Starrett Co. v. Otis Elevator Co., supra, 271 N. Y. 36, 41; see, also, Dick v. Sunbright Steam Laundry Corp., supra, 307 N. Y. 422, 425.) Concededly, there was no such unequivocal expression in the contract before us.
The order of the Appellate Division should be reversed, the complaint of the Inmans against the defendants Lacey and the defendant Smith and the third-party complaint of the Authority against such defendants should be dismissed, with costs to the appellants in this court and in the Appellate Division, and the questions certified answered in the negative.
Conway, Ch. J., Desmond, Dye, Froessel, Van Voorhis and Burke, JJ., concur.
Order reversed, etc.

. Neither the height of the step nor the distance that the child fell, that is, the vertical distance from the stoop to the pavement, is disclosed.