Ellio RANDO et al., Plaintiffs,

v.

LUCKENBACH STEAMSHIP COMPANY, Inc., et al., Defendants.

LUCKENBACH STEAMSHIP COMPANY, Inc., Third Party Plaintiff,

v.

H. MUEHLSTEIN & CO., Inc., Third Party Defendant.

Civ. No. 17125.

United States District Court
E. D. New York.

Feb. 23, 1960.

See also, D.C., 155 F.Supp. 220.

Eisman, Lee, Corn, Sheftel & Bloch, New York City, by Julius B. Sheftel, New York City, for the motion, Purdy, Lamb & Catoggio, New York City, co-counsel, for third party defendant H. Muehlstein & Co. Inc.

Emile Z. Berman and A. Harold Frost, New York City, for third party plaintiff, by Howard Lester, New York City, in opposition.

RAYFIEL, District Judge.

The third-party defendant, H. Muehlstein & Co. Inc., hereinafter referred to as Muehlstein, moves, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to dismiss the third-party complaint heretofore served upon it by the defendant, Luckenbach Steamship Company, Inc., hereinafter referred to as Luckenbach.

The actions brought against Luckenbach resulted from a fire and explosion which destroyed its pier at the foot of 35th Street, in Brooklyn, New York, on December 3, 1956.

Muehlstein contends that the third-party complaint is insufficient in law, and fails to state a claim upon which relief may be granted.

The third-party complaint states three causes of action against Muehlstein. The first alleges a claim for indemnity, based upon an express contract referred to as "a contract of carriage"; the second alleges a claim for breaches of certain warranties and representations as to the condition of the Muehlstein shipment of scrap foam rubber; and the third is based upon the theory of active and passive negligence, the third-party plaintiff claiming that the fire and explosion were caused by the "primary, active and affirmative negligence" of Muehlstein. I

shall discuss the causes of action *seriatim*.

The "contract of carriage" entered into between Luckenbach and Muehlstein contains the following provision:

"14. The shipper, consignee, or owner shall be liable for all loss, expense, damage or delay to *ship or cargo* caused by inflammable, explosive, noxious or dangerous goods shipped without full disclosure in writing of the nature of said goods before delivering the same to carrier, whether shipper be principal or agent, and whether or not he had notice of their nature. Carrier may destroy such goods or throw them overboard at any time without liability therefore. * * *." (Emphasis supplied.)

All of the suits against Luckenbach in which it seeks to implead Muehlstein involve *personal injuries* and not *damage to ship or cargo* so that the provision above referred to is not applicable and the first cause of action is obviously insufficient.

The second cause of action alleges that Muehlstein warranted and represented that the shipment which it delivered to Luckenbach on November 7, 1956 was safe; that Luckenbach, relying on those representations, accepted the shipment for carriage; that said representations and warranties were untrue, and were made to induce Luckenbach to accept the shipment, when, in fact, it was not safe, but was dangerous and inflammable, all of which was known or should have been known to Muehlstein; that by reason thereof the plaintiffs have commenced these actions, which have been consolidated; that if the aforesaid plaintiffs recover it will be because of the liability of Luckenbach, brought about by the breach of contract, warranties and representations by Muehlstein, for which it is bound to hold Luckenbach harmless.

Luckenbach, in its memorandum, seeks to draw an analogy between the situation pleaded in the second cause of action and the case in which a retailer, who has sold defective merchandise, has a valid claim over against the manufacturer thereof when suit is brought against him by his customer, particularly in cases involving food or beverages.

The cases cited by Luckenbach are completely inapposite. The complaints herein charge Luckenbach with negligence in the operation, maintenance and supervision of its pier, in which Muehlstein's scrap foam rubber had been stored by Luckenbach for approximately a month prior to the fire. Further, they charge Luckenbach with negligence in permitting Atlantic Ship Rigging Co. Inc. to use torches on its pier in the vicinity of the place where volatile and explosive materials were stored.

Luckenbach's argument might have some merit if the fire had started by *spontaneous combustion* in the Muehlstein cargo, but, concededly, it did not. It resulted from sparks incident to the use of torches by employees of the Atlantic Ship Rigging Co., Inc., which *caused* the scrap foam rubber to ignite. Mr. Justice McGivern, of the New York State Supreme Court, had occasion to comment on the situation in a motion similar to the one at bar, in the case of Bush Terminal Bldg. Co., Inc. v. Luckenbach S. S. Co., 196 N.Y.S.2d 515, 519, not otherwise reported based on the same fire and explosion, in which the defendant Luckenbach, sought to implead Muehlstein, when he said, "This happening occurred, of course, not by anything generated from the faulty packing and storage of combustible materials and from the continuing storage and maintenance, in negligent disregard of the nuisance and dangerous hazard thus created, *but rather from the heat and fire generated by the use of torches, all in such circumstances that those creating the hazardous nuisance, and directing and performing the repair operations are legally responsible for the ignition that sparked the fire. * * * Muehlstein may be said to be the remotest in the chain of causation and activity.*" (Emphasis supplied.) I find the second cause of action insufficient in law.

We come now to the third cause of action, in which Luckenbach charges Muehlstein with active negligence, and contends that if it (Luckenbach) is liable to the plaintiffs in the consolidated action then Muehlstein is liable over to it. Again, a perusal of the original complaints against Luckenbach reveals that they charge Luckenbach with *primary* and *active* negligence. The New York Rule on the subject was discussed fully by Chief Judge Conway of the New York Court of Appeals in the case of Putvin v. Buffalo Electric Co., 5 N.Y.2d 447, at page 455, 186 N.Y.S.2d 15, 21, 158 N.E.2d 691, 695, when he stated: "The right of a defendant to implead another, then, depends upon his being able to demonstrate a right to be *indemnified* by the one he seeks to implead. As stated in McFall (supra), [McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 107 N.E.2d 463] where several tortfeasors are involved, an implied contract of indemnity arises in favor of the wrong-doer who has been guilty of passive negligence, if there be such, against the one who has been actively negligent. So it is that a claim over against a third person charging the third person with active negligence will be allowed if the original complaint can reasonably be interpreted as including an allegation of passive negligence on the part of the defendant (see, E. G., Monteverdi v. French Realty Corp., 274 App.Div. 945, 83 N.Y.S. 2d 758, where the defendant was charged with negligence, among other things, 'in suffering' a large quantity of combustible matter to accumulate on its property. This was held to allege passive negligence). Conversely, where the defendant is alleged to be guilty only of active as distinguished from passive negligence, impleader is improper as a matter of law, since an actively negligent tortfeasor is not entitled to indemnity (see, e. g., Messaro v. Long Island R. Co., 274 App. Div. 939, 83 N.Y.S.2d 527). If the then defendant is alleged to be guilty of both active and passive negligence, impleader of the person claimed to be guilty of active negligence is proper (see, e. g., Johnson v. Endicott-Johnson Corp., 278 App.Div. 626, 101 N.Y.S.2d 922)." (Matter within brackets added.)

In the case of Guarnieri v. Kewanee-Ross Corporation, 263 F.2d 413, at page 421, Judge Moore, of the Court of Appeals of this Circuit, said, "Applying the law of New York as gleaned from these cases to the facts of this case it is at once apparent that the *only claim asserted by plaintiff is for* the negligence of Kewanee. This negligence does not arise by operation of law as in the landlord type of case but because 'they failed and neglected to use proper and adequate materials and methods in the welding work upon the metal head of said "boiler." ' This is a charge of active negligence and as put to the jury in the court's instructions the only type of negligence for which plaintiff could recover. Nor is there to be found in the complaint any allegation that Burnham was responsible for or connected with the negligence attributed to Kewanee. Under New York law, therefore, Kewanee cannot recover against Burnham on the theory of indemnity by operation of law or on any theory of passive-active negligence. *In fact, had Burnham moved to dismiss on the third-party complaint under the decisions in Edwards, Anderson, Harrington and Inman, supra, the motion should have been granted.*" (Emphasis supplied.)

Edwards v. Sophkirsh Holding Corp., 280 App.Div. 168, 112 N.Y.S.2d 219.

Anderson v. Liberty Fast Freight Co., 285 App.Div. 44, 135 N.Y.S.2d 559.

Harrington v. 615 West Corp., 2 N.Y. 2d 476, 161 N.Y.S.2d 106, 141 N.E.2d 602.

Inman v. Binghamton Housing Authority, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895, 59 A.L.R.2d 1072.

Applying the tests enunciated by these cases the third cause of action is also insufficient in law, and the motion to dismiss the third-party complaint is granted.