Edward D. SIEMER, as Guardian Ad Litem for Deanne C. Siemer, an Infant, and Edward D. Siemer, Appellants,

v.

MIDWEST MOWER CORPORATION, Appellee.

No. 16387.

United States Court of Appeals
Eighth Circuit.

Jan. 30, 1961.

Orville Richardson, St. Louis, Mo., for appellants.

Ernest E. Baker, St. Louis, Mo., for appellee; L. A. Robertson, Alexander & Robertson, St. Louis, Mo., on the brief.

Before JOHNSEN, Chief Judge, VOGEL and BLACKMUN, Circuit Judges.

VOGEL, Circuit Judge.

This is a suit for money damages to compensate for personal injuries resulting from an accident. Plaintiffs are Deanne Siemer, a 13-year-old child at the time of the accident, and her father, Edward, both citizens of the State of New York. The defendant is Midwest Mower Corporation, a Missouri corporation. Suit was instituted in the United States District Court for the Eastern District of Missouri. Diversity of citizenship and sufficiency of amount satisfy federal jurisdiction.

Plaintiffs' complaint alleged negligence on the part of the defendant in manufacturing, selling and making available for general public use a lawnmower "which was not safe for its intended use". The complaint affirmatively alleged that plaintiff Deanne was free from contributory negligence. The defendant's answer is a general denial plus an allegation that if any injury was sustained by the plaintiffs it was the result of the plaintiffs' own negligence and carelessness directly and proximately contributing thereto. The case was tried to a jury and resulted in a verdict in favor of the defendant. Plaintiffs have appealed.

While operating a rotary-type lawnmower manufactured by the defendant, the plaintiff Deanne Siemer's right foot was struck by the revolving blade, causing serious injury and necessitating considerable medical expense. Plaintiffs' case was based upon their contention that the mower was negligently designed in that the revolving blade was inadequately guarded by easily bent metal bars at the

front and not guarded at all at the rear where a hole in the housing permitted grass to escape. It was argued in behalf of plaintiffs that this created a substantial foreseeable risk of harm to an operator walking directly behind the mower.

This appeal involves but two issues: (1) Did the trial court err in submitting to the jury the question of contributory negligence on the part of Deanne Siemer; and (2) did the court err in submitting to the jury as sole cause negligence the act of a third person, Irma Scholz? It is claimed by the plaintiffs that there was a lack of substantial evidence to support either of these two submissions. It accordingly becomes necessary to examine the evidence in detail.

The accident causing the injury complained of occurred on September 25, 1954, in Orchard Park near Buffalo, New York. The plaintiff Deanne was visiting at the home of a 13-year-old friend, Carol Scholz. Carol was mowing the back lawn at the Scholz home with a rotary power mower manufactured by the defendant in Missouri, shipped to a retailer in New York and sold there to a Mr. Gutekunst, a neighbor of the Scholzs, who had loaned it to Irma Scholz, mother of Carol. Mrs. Scholz had a reel-type mower which was being repaired. She accordingly borrowed the mower in question from her neighbor. He warned her at the time that the mower was dangerous. He showed Mrs. Scholz how to operate it and suggested that she do the mowing herself instead of letting her daughter to it because he was "a little frightened of that thing". Mrs. Scholz mowed the front lawn with the borrowed mower, then turned it over to her daughter, Carol, to mow the rear lawn while she, the mother, went shopping. In the back yard two hollow metal pipes about two inches in diameter had each been firmly embedded in a concrete foundation ten inches in diameter, leaving about one and three-quarters inches of pipe protruding above the ground level. These were designed for the purpose of holding clothes poles. When not in use for poles they were sometimes covered by flower pots. On this particular day one of the poles had been taken down but no flower pot had been placed over the protruding pipe. The other pipe had a pole in it.

While Carol was mowing the back lawn, Deanne arrived and the two of them decided to take turns with the mowing in order to get it done more quickly. Deanne had never used a rotary-type mower. She had, however, cut the lawn with her father's reel-type mower many times. She had been warned about "those mowers" and understood she might get hurt if she came in contact with them. Deanne had been mowing for five or ten minutes when the accident occurred. She was going down a slight grade, mowing more slowly than the average person walks, when the mower apparently struck the uncovered metal pipe. She testified she had been looking ahead of the mower to see if anything was in the way; that when the mower struck "something" it "bounded back on my foot" and "I am sure I did not jerk it back, and I'm certain it did come back, I didn't walk into it." When she looked down, her foot was in the opening at the rear of the housing covering the revolving blade. There was evidence to the effect that the lower bar at the front of the mower was bent and marked or cut by the revolving blade which itself was marked and distorted by the accident. The evidence is that the grass was higher than the pipe, from which the jury could have concluded that the pipe was difficult or impossible to see.

Deanne testified that she knew there was something under the housing of the mower cutting the grass and that she must keep from getting her hands or feet or any part of her body under there; that if she had seen the pipe sticking up from the ground in front of the mower she would have known that it would be dangerous to run into. Other testimony in behalf of the plaintiffs indicated that if the mower were pushed as Deanne testified and it struck the pipe, the soft malleable steel bar at the front of the mower would bend inward, permitting the revolving blade to strike the metal pipe.

Expert testimony was offered by both parties. That in behalf of the plaintiffs indicated that the blade, striking the curved surface of the steel pipe, would create a force in the opposite direction of sufficient magnitude to throw the mower upward and backward several feet.

Defendant's expert witnesses testified from experience and from tests made and examination of the mower that the whirling blade never struck the pipe but confined its engagement to the metal bar and that if it did strike the pipe it could not create a force sufficient to throw it up into the air and backward so as to strike the operator's foot. Additionally, they claimed that any force created would have a tendency to cause the mower to go sideways to the left and not backward.

Plaintiffs' expert witness testified that the mower in question had a dangerous design in several respects: First, because the revolving blade was only an inch and a half from the rear of the housing opening at the back of the mower; second, because the handle could be freely moved up into an almost vertical position, permitting the mower to come backward on the operator's foot; and, third, a weak, malleable and easily bendable guard at the front of the mower.

Defendant's expert witnesses testified that the mower was designed as a "trimmer" so it could be gotten close to objects while cutting grass and that this explained the nearness of the whirling blade to the edge of the housing. They gave it as their opinion that the metal bars at the front of the machine were of proper material and design.

First, it must be conceded that the opening in the rear of the mower housing was obvious to any operator of the mower. It was also obvious to an operator that the handle moved freely up into an almost vertical position. Deanne realized the danger of getting her foot under the

mower. She knew that it should not be run into any objects and realized the danger therefrom. She knew of the likelihood or possibility of some obstruction being in the grass and she watched ahead for that purpose. Deanne was thirteen years of age at the time. She was a top student in her class at school. She had mowed the lawn at her home with a power mower of the three-reel-type cutters many times. She had mowed three or four strips past the pipe in the lawn before the accident. The pipe had a concrete foundation ten inches in diameter.

■ With reference to contributory negligence, the court charged the jury as follows:

"The Court further instructs the jury that if you find and believe from the evidence that plaintiff Deanne Siemer saw or by the exercise of ordinary care she should have seen the pipe mentioned in evidence and that she knew or by the exercise of ordinary care should have known that it was dangerous to run the mower in question against the pipe and that some injury was likely to result if said mower collided with said pipe and that she negligently ran said mower into and against said pipe and that said negligence, if any, directly caused her injury then your verdict should be in favor of defendant and against plaintiff."

In so doing we think the court was entirely correct. The issue of contributory negligence was raised by both the pleadings and the evidence. Plaintiffs' complaint raises the issue by affirmatively pleading that the plaintiff was wholly free from any negligence contributing to the accident.[1] In defendant's answer it affirmatively alleged that the injury "was the result of plaintiffs' own negligence and carelessness directly and proximately contributing thereto". In addition to the

---

1. Under the law of the State of New York, where the accident occurred, plaintiff was required to plead and prove freedom from contributory negligence. Camardo v. N. Y. State Ry., 1928, 247 N.Y. 111, 159 N.E. 879, 880; Fitzpatrick v. International Ry. Co., 1929, 252 N.Y. 127, 169 N.E. 112, 115, 68 A.L.R. 801; Hansen v. City of New York, 1948, 274 App. Div. 196, 80 N.Y.S.2d 249, 250, affirmed 299 N.Y. 136, 85 N.E.2d 905.

issue of contributory negligence having been raised by the pleadings, the evidence also required its submission to the jury. The jury could have found under the evidence that Deanne saw the pipe in question or could have found that she did not look carefully enough or she would have seen it. She had mowed past the pipe three or four times before coming in contact with it. She was aware of the danger of running into such an obstruction. She claimed to have been looking to see if anything was in the way. Additionally, the hole in the rear of the housing and the loose handle were open and obvious. Certainly it would have been error to hold under the evidence here that the plaintiff Deanne was free from contributory negligence as a matter of law. Conversely, to have failed to instruct on contributory negligence would have been error.

■ Plaintiffs' second claimed error on the part of the trial court was in giving the following instruction, to which exception was taken:

"The Court further instructs the jury that if you find and believe from the evidence that Irma Scholz borrowed the lawnmower in question from the owner thereof to cut her lawn, and that the owner warned her of the danger of allowing children to operate the lawnmower and that she turned the lawnmower over to her daughter to operate without supervision, and that she knew that her daughter would likely allow children to operate said lawnmower, and that in so doing under the aforesaid circumstances Irma Scholz was negligent; and that such negligence, if any, was the sole, direct and proximate cause of the injury sustained by plaintiff Deanne Siemer and that defendant did not commit any act of negligence submitted to you in the Court's instruction which directly caused or contributed to cause said injury, then your verdict, should be in favor of defendant and against plaintiff on Count One of Plaintiffs' Petition.

"You are further instructed that if you do find from the evidence that Mrs. Scholz failed to use due care in allowing her daughter to use the mower, and if you find that such negligence or fault, if any there was, on the part of Mrs. Scholz directly contributed to cause injury to Miss Siemer, nevertheless if you also find from the evidence that the defendant was also negligent in that respect referred to in these instructions, and further find that such negligence of the defendant also directly contributed with the fault, if any, of anyone else to cause her injury, and that she was not guilty of negligence herself, then you are instructed that not only would Miss Siemer and her father be entitled to recover, but their damages should not be reduced on account of any contributory fault of any other person."

It is the contention of the plaintiffs here that there is a lack of any substantial evidence to justify or support the foregoing instruction. It must be remembered that the owner of the mower considered it a dangerous machine, that he warned Mrs. Scholz of the fact that it was dangerous, that he suggested to her that she do the mowing herself and not let her daughter Carol do it, and that he was "frightened of that thing". We think under this evidence that it was possible for the jury to have concluded that the mother, who was familiar with the entire situation, the lawn, the obstructions therein, the height of the grass, etc., was guilty of negligence in turning the machine over to her 13-year-old daughter and leaving her in charge of it knowing of the possibility of other children coming to help with the mowing and in so doing getting injured. The jury might have concluded that this carelessness in allowing children of that age to handle a power mower unsupervised was the sole cause of the accident. Cf. Schloupt v. Cobb, 1946, 271 App.Div. 418, 66 N.Y.S.2d 739; Romer v. Stryker, 1894, 142 N.Y. 134, 36 N.E. 808; Partlow v. Goldstein, 8 Cir., 1959, 263 F.2d 169, 171,

173. See Restatement, Torts § 307, comment *a* (1934). The trial judge, a man of years of experience in the trial of jury cases, saw the witnesses who appeared and heard the testimony and he refused to conclude that the evidence could not justify a finding of negligence on the part of Mrs. Scholz. We agree and hold that the testimony justified the submission of the charge in question. Even if this were not true, the alleged error could be no more than harmless and, under Rule 61 of the Federal Rules of Civil Procedure, Title 28 U.S.C.A., not grounds for disturbing the judgment, and order, for it must be pointed out that the court very carefully told the jury that even if there was negligence on the part of Mrs. Scholz or anyone else, excepting the plaintiff Deanne herself, they must find against the defendant if the defendant was guilty of any negligence which contributed to cause the accident and " * * their damages should not be reduced on account of any contributory fault of any other person". If Mrs. Scholz's negligence contributed to cause the accident, it could only relieve the defendant if such negligence was the sole and only cause of the accident. The only way the defendant could be relieved from negligence of its own was by the contributory negligence of the plaintiff Deanne herself, provided the jury found that she was guilty of such negligence.

It is the contention of the defendant here that its responsibility is very much limited. Under the substantive law of the State of New York, which was controlling, the manufacturer could not be held responsible unless the accident was the result of an unknown or latent danger not known or obvious to the plaintiff Deanne. See Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802, 804, 805; Inman v. Binghampton Housing Authority, 1957, 3 N.Y.2d 137, 164 N.Y.S. 2d 699, 143 N.E.2d 895, 899, 59 A.L.R.2d 1072. Defendant points out that under the circumstances here plaintiffs failed in their proof in attempting to establish that the defects charged were latent and not patent and that it would have been

the duty of the trial court to give judgment notwithstanding had the jury returned a verdict in plaintiffs' favor. In view of our conclusions that the court committed no error in the instructions, it is unnecessary for us in this opinion to consider defendant's contention.

Affirmed.