ANTHONY TOTTEN, AN INFANT BY HIS GUARDIAN *AD LITEM*, JOHN J. TOTTEN, AND JOHN J. TOTTEN, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. SUMNER B. GRUZEN AND HUGH KELLY, INDIVIDUALLY AND TRADING AS KELLY & GRUZEN, A PARTNERSHIP. FRANK W. BOGERT, INDIVIDUALLY AND TRADING AS FRANK BOGERT CONSTRUCTION CO.; AND LANGFELDT HEATING & VENTILATING CORP., A CORPORATION, DEFENDANTS-RESPONDENTS, AND HOUSING AUTHORITY OF THE CITY OF HACKENSACK, DEFENDANT.

Argued April 1, 1968—Decided July 11, 1968.

*Mr. Joseph M. Levinsohn* argued the cause for appellants.

*Mr. Mark D. Larner* argued the cause for respondents Sumner B. Gruzen and Hugh Kelly *(Messrs. Budd, Larner, Kent & Gross,* attorneys; *Mr. Larner,* of counsel).

*Mr. George T. Daggett* argued the cause for respondent Frank W. Bogert *(Messrs. Vaccaro and Osborne,* attorneys; *Mr. Daggett,* of counsel).

*Mr. Lewis W. Vanderbach* argued the cause for respondent Langfeldt Heating and Ventilating Corp.

The opinion of the Court was delivered by

HALL, J.   This case, in its current posture, presents the strictly legal question whether the architects, the general contractor, or the heating contractor of an apartment house *can* be held liable in negligence, on the theory of alleged improper design of the heating system creating an unreasonable risk of harm, for personal injuries sustained by the child of a tenant some years after their work had been completed and accepted by the owner. The trial court decided they could not, as a matter of law, dismissing the complaint as to them on motion after plaintiffs' opening to the jury. The court relied upon the "completed and accepted" rule as set forth in *Miller v. Davis & Averill, Inc.,* 137 *N. J. L.* 671, 674–675 *(E. & A.* 1948) :

"* * * the general rule is well established that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner or employer and it has been accepted by him, even though the injury results from the contractor's failure properly to carry out his contract. When the work is finished by the contractor and accepted by the employer the latter is substituted as the party responsible for existing defects."

Plaintiffs' appeal was certified on our own motion before argument in the Appellate Division. *R. R.* 1:10–1.

The following factual framework is sufficiently established by the record, applying the rule that a motion for dismissal upon a plaintiff's opening statement "* * * admits the truth of all the facts outlined and gives a plaintiff the benefit of every possible favorable inference which can be logically and legitimately deduced." *Passaic Valley Sewerage Commissioners v. Geo. M. Brewster & Son, Inc.,* 32 N. J. 595, 607 (1960).

In the late 1940's defendant Housing Authority of the City of Hackensack erected a multi-family housing project for low income families. Defendants Gruzen and Kelly were the architects who prepared the plans and specifications for the project. Defendant Bogert was the general contractor and defendant Langfeldt Heating and Ventilating Corp. was the heating contractor who actually installed the steam heating system pursuant to the plans and specifications. At the completion of the construction, the Housing Authority accepted the project and the other defendants had nothing to do with it thereafter. The Authority has since operated the project, renting the apartments to tenants as an owner-landlord.

In May 1961, the adult plaintiff was a tenant in the project and lived in one of the apartments with his family, which included his three-year old son, the infant plaintiff. On a day late in that month the child was burned on the right leg as a result of contact with hot piping, which was exposed and uncovered, leading to the radiator in his bedroom, where his mother had placed him to play. The burns required hospitalization, with skin grafting, and have left scars.

The supply pipe to the rather low radiator came out of the wall of the room some four or five feet from it and about ten inches above the floor. The return pipe left the opposite end of the radiator and ran in back of it some distance, parallel to the supply pipe but only about three inches from the floor to the point at which it entered the wall. This

resulted in the radiator being positioned a few inches from the wall rather than flush with it and necessitated an outward bend in the supply pipe near the radiator, so it then ran perpendicular to the wall for several inches and then took another turn upward for a foot or so to the valve located at the top. All this piping was uncovered and formed a ladder-like arrangement near the radiator which the child had tried to climb. He was found by his mother with his right leg caught around the valve and touching the hot pipes leading to it. The claim of negligence rested on alleged hazardous design of the piping system by reason of the exposed and uncovered piping, planned by the architects and constructed by the contractors. There was no claim that the piping system was not installed in accordance with the plans and specifications.

The instant suit is a consolidated action. The father first sued, prior to the expiration of two years following the accident, in the Bergen County District Court for medical and hospital expenses and loss of services. The heating contractor was not made a party to this suit and the architects were not served. More than a year after the expiration of the two-year period, a suit was commenced in the Law Division, against all the present defendants seeking damages for the child's injuries and reasserting the father's *per quod* claim. All answered, denying negligence. The architects and the heating contractor also pleaded the two-year statute of limitations as to the father's claim and the architects and the general contractor filed cross-claims.

█ There is nothing in any of the answers of these defendants or in the pretrial order entered after consolidation to indicate a defense of no liability by reason of the "completed and accepted" rule. Indeed, the defense was not raised on the motions for involuntary dismissal made following plaintiffs' opening until the last attorney to be heard, representing the heating contractor, suggested it. Counsel for the architects and the general contractor then quickly adopted it. Plaintiffs' attorney was quite naturally taken

completely by surprise, stating to the court that he was not familiar with the *Miller* case. In these circumstances the defense was improperly and unfairly raised and the trial court should not have granted the motions. Not only must any such defense be set forth in the pretrial order to be available, but the better practice is that the pretrial order direct that a pure question of law, which might be dispositive of the case or of a substantial issue, be determined on motion prior to trial. *Passaic Valley Sewerage Commissioners v. Geo. M. Brewster & Son, Inc., supra* (32 *N. J.,* at *p.* 606–607).[1]

Even though the defense of non-liability by reason of the "completed and accepted" rule should not have been entertained, we should decide whether that rule is to be overthrown completely, as plaintiffs urge.

The principle that an independent contractor cannot be liable to a third person for injuries or damages caused by his negligence goes back in New Jersey at least to *Marvin Safe Co. v. Ward,* 46 *N. J. L.* 19 (*Sup. Ct.* 1884), which relied on the English case of *Winterbottom v. Wright,* 10 *M. & W.* 109, 152 *Eng. Rep.* 402 (1842). There the lack of privity between plaintiff and defendant was held to bar one not a party to a contract from suing on a claim of breach of duty arising out of the contract. From that thesis, which was

---

[1] The other principal ground for dismissal urged by respondents on the motions was lack of sufficient detail as to the claimed negligence of the respective defendants. This we would not consider sufficient to dictate dismissal in view of the limited permissible scope of an opening. The architects and the heating contractor also urged dismissal of the *per quod* claim as to them by reason of the two-year statute of limitations. Plaintiffs stipulated to dismissal as to the heating contractor with respect thereto, but the record is not clear that the stipulation was intended to extend to the architects as well. At least, the court did not rule on this aspect.

The court denied the motion as to the Housing Authority and the trial proceeded as to it. A settlement was reached during the course of that trial and approved by the court. The plaintiffs expressly reserved their causes of action against the other defendants, stating on the record that the settlement was not to be construed as intending to discharge co-tortfeasors.

also set forth in *Miller* (137 *N. J. L.*, at *p.* 674), developed other reasons for non-liability in such situations, including the unrealistic theory spelled out in *Miller* (137 *N. J. L.*, at *p.* 675) that when the work is accepted by the owner, the contractor is deprived of all opportunity to rectify his wrong, the owner being thereupon substituted as the party responsible for existing defects. Exceptions and refinements of dubious strength grew up however and our case law, as in most other states, has run an uncertain, inconsistent and somewhat irrational course, easily demonstrated by a perusal of the decisions in the building or non-chattel field both before and since *Miller*. *Van Winkle v. American Steam Boiler Co.*, 52 *N. J. L.* 240 (*Sup. Ct.* 1890); *Schutte v. United Electric Co. of New Jersey*, 68 *N. J. L.* 435 (*Sup. Ct.* 1902); *Styles v. F. R. Long Co.*, 70 *N. J. L.* 301 (*E. & A.* 1904); *Lydecker v. Freeholders of Passaic*, 91 *N. J. L.* 622 (*E. & A.* 1918); *Connick v. John F. Craig, Inc.*, 107 *N. J. L.* 375 (*E. & A.* 1931); *Smith v. Claude Neon Lights, Inc.*, 110 *N. J. L.* 326 (*E. & A.* 1933); *Bacak v. Hogya*, 4 *N. J.* 417 (1950); *Blankley v. Nostrame*, 30 *N. J. Super.* 405 (*App. Div.* 1954); *Gibillerra v. Rosemawr Homes*, 32 *N. J. Super.* 315 (*App. Div.* 1954), affirmed 19 *N. J.* 166 (1955); *Levy v. C. Young Construction Co., Inc.*, 46 *N. J. Super.* 293 (*App. Div.* 1957), affirmed on other grounds 26 *N. J.* 330 (1958); *Sarnicandro v. Lake Developers, Inc.*, 55 *N. J. Super.* 475 (*App. Div.* 1959).

By contrast, the privity requirement and its progeny were rather early broken away from, here as elsewhere, with respect to the liability for negligence of manufacturers or suppliers of chattels to injured third persons. *Heckel v. Ford Motor Co.*, 101 *N. J. L.* 385 (*E. & A.* 1925), in effect following, but not citing, the landmark case of *MacPherson v. Buick Motor Co.*, 217 *N. Y.* 382, 111 *N. E.* 1050, *L. R. A.* 1916 *F.* 696 (*Ct. App.* 1916).

The state of the law generally in the building contractor field in 1964 is well summarized by Dean Prosser in his *Law of Torts* (3rd Ed. 1964) § 99:

"The liability of building contractors has had a long and painful history. Although there is no visible reason for any distinction between the liability of one who supplies a chattel and one who erects a structure, particularly where the latter supplies the parts and materials, this is a field in which the ghost of Winterbottom v. Wright has died very hard. The misbegotten progeny of that case survive even today. Until quite recent years it was the prevailing rule that the contractor would be liable for any injury resulting from his negligence before his work was completed, but that his responsibility was terminated and he was not liable to any third person once the structure was completed and accepted by the owner.
* * * * * * * *

"* * * By now, however, there has been a general overthrow of the ancient approach, and it is in full retreat. The analogy of MacPherson v. Buick Motor Co. has been persuasive, and finally has been accepted. A series of decisions have applied it to building contractors, placing them upon the same footing as sellers of goods, and holding them to the general standard of reasonable care for the protection of anyone who might foreseeably be endangered by their negligence, even after acceptance of the work. This is now the majority rule, not only as to contractors doing original construction work, but also as to those doing repair work or installing parts, as well as supervising engineers and architects." (*pp.* 693–694, 695).

Cases in other jurisdictions representative of the modern majority view are *Inman v. Binghamton Housing Authority,* 3 *N. Y. 2d* 137, 164 *N. Y. S. 2d* 699, 143 *N. E. 2d* 895, 59 *A. L. R. 2d* 1072 (*Ct. App.* 1957); *Dow v. Holly Manufacturing Co.,* 49 *Cal. 2d* 720, 321 *P. 2d* 736 (*Sup. Ct.* 1958); *Leigh v. Wadsworth,* 361 *P. 2d* 849 (*Okla. Sup. Ct.* 1961); *Fisher v. Simon,* 15 *Wis. 2d* 207, 112 *N. W. 2d* 705 (*Sup. Ct.* 1961); *Talley v. Skelly Oil Co.,* 199 *Kan.* 767, 433 *P. 2d* 425 (*Sup. Ct.* 1967); *Rogers v. Scyphers,* 161 *S. E. 2d* 81 (*S. C. Sup. Ct.* 1968).

New Jersey did not commence to join the majority until *Schipper v. Levitt & Sons, Inc.,* 44 *N. J.* 70 (1965). There this court held, in a comprehensive opinion by Justice Jacobs, generally for the same reasons expressed by Dean Prosser, that a mass developer of houses, who was architect, builder and vendor all in one, could be held liable in negligence (and also on the theory of strict liability in tort) for burns from scalding water suffered by the young child of a lessee of the first purchaser of the dwelling. The factual

basis was failure to install a device to control the temperature of water in a bathroom sink. The case came up on a judgment of involuntary dismissal granted at the end of the plaintiffs' case. The thrust of the opinion was that such an entrepreneur in the mass housing business should be subject to the same legal responsibility as a manufacturer or supplier of chattels.

We see no good reason why the negligence principles adopted in *Schipper* with respect to mass housing developers (44 *N. J.*, at *pp.* 80–88) should not be applied to all builders and contractors and we now so hold. They are not to be relieved from liability merely because their work has been completed and accepted by the owner. Such liability may rest on architects and engineers on the basis of improper design as well as on contractors for defective materials, equipment and workmanship. Indeed, *Schipper* was essentially a design case. See also *Inman v. Binghamton Housing Authority, supra* (164 *N. Y. S.* 2d 699, 143 *N. E.* 2d 895). (Since there is no claim in the instant case on the theory of strict liability in tort, we do not reach the question whether that doctrine as applied in *Schipper* with respect to mass developers should be equally applicable in other building situations.)

These defendants urge, however, that, even if the "completed and accepted" rule is to be overthrown generally, the so-called "patent-latent" distinction should be maintained and that, on the face of the plaintiffs' opening, it appears that the so-called defect here was "patent" and not "latent". Most cases to date have limited third-party liability of contractors and the like to the latent category, despite the fact that difficulty will frequently arise as to in which category the particular defect falls. See *e. g., Inman v. Binghamton Housing Authority, supra* (164 *N. Y. S.* 2d 699, 143 *N. E.* 2d 895). *Prosser, supra, p.* 696. It seems unclear from the cases whether patency is to be determined from the standpoint of the eyes of the owner or of the particular person injured. If the latter, perhaps the concept is more appropri-

ately one of contributory negligence rather than an absence of violation of any duty owed by the contractor. In any event, the dichotomy appears to rest on the notion that if the design or workmanship is so obviously bad and dangerous, the owner would or should do something promptly to correct it and, if he does not, liability for injury rests with him alone. The idea is somewhat strange and illogical in thus terminating the possibility of liability of the party basically at fault. Perhaps it would be sounder to say that the subsequent inaction of the owner simply adds him as another possible tortfeasor.

■■ We believe it sounder not to find the patent-latent distinction to be a hard and fast rule, but to treat it as suggested in *Schipper, supra* (44 *N. J.,* at *pp.* 81, 84, 87), *i. e.,* the obviousness of a danger does not necessarily preclude a jury finding of unreasonable risk and negligence; however, it will so preclude if the obviousness to the claimant justifies the conclusion that the condition is not unreasonably dangerous; otherwise it is simply a factor to consider on the issue of negligence of the contractor.

Since dismissal in the case at bar was grounded solely on the "completed and accepted" rule as a matter of law and came immediately after the plaintiffs' opening, we should decide nothing more than we have. We therefore express no view on various matters of defense urged by these defendants in their briefs and oral argument, not all of which were set forth in their pleadings or the pretrial order and none of which is substantiated by any evidence in the present record. These include a claim that the exposed and uninsulated heating piping design was required by federal authorities (money from which source was utilized to construct the project) in order to provide adequate heat at less cost in this low rent structure and so none of these defendants can be held liable when the design was so imposed. In any event, the architects contend that, judged by the proper standard applicable to them, they prepared the plans and specifications in accordance with the ordinary care and skill

of the profession at the time. The general contractor claims he can be under no liability because the heating work was performed under a separate contract between the heating contractor and the owner, the former not being his sub-contractor. The heating contractor asserts it cannot be liable because it only followed the plans and specifications prepared by the architects, insisted upon by the owner and furnished it by the general contractor. All such matters will have to be first passed upon in an appropriate setting by the trial court.

Since a new trial is required, a new pretrial conference and order must first be had. The original pretrial order was quite inadequate in the light of the numerous issues involved. Pleading amendments and additional discovery may also be necessary to put the case in proper shape for retrial.

The judgment of the Law Division as to the defendants-respondents is reversed and the case is remanded for a new trial. Costs to plaintiffs on this appeal.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and HALL—5.

*For affirmance*—None.