Fuchsberg, J. (dissenting).
I dissent because I believe that a quarter century of experience with the patent-danger rule has demonstrated beyond question that it arbitrarily closes the door on litigation of legitimate questions of fact in negligence, *762 implied warranty and strict liability cases. The present case is a classic example of the injustice fostered by this rule.
Christopher Meyer, a six-year-old boy, was injured when he came in contact with the rear part of a hay "unloader wagon” which was being operated by his father at the farm of a neighbor who owned it. His hand got caught up in the exposed, unshielded machinery which defendant at argument agreed extended beyond the rear of the wagon (bars, chains, gears, and angle-iron load driving part). The boy’s arm was drawn in after his hand. Serious injuries resulted.
Plaintiff commenced an action against Gehl Company, the manufacturer of the hay unloader for negligence, breach of warranty, and strict liability. Common to each of the counts is the contention that the unloader was improperly designed in that it was not equipped with proper safety guards which would cover the exposed portion of the machinery at the rear of the hay unloader. The defendant moved for summary judgment and his motion was granted on the strength of the authority of Campo v Scofield (301 NY 468) and Inman v Binghamton Housing Auth. (3 NY2d 137). The Appellate Division affirmed on the selfsame grounds.
The long and short of the opinions is that recovery is denied as a matter of law because the parts which caused the injury were open and exposed to the naked eye—the danger was a patent one. The thrust of the rule is simple—recovery can never follow exposure to a dangerous condition which is open and obvious even when it is clear that the dangerous condition was not nor should have been appreciated by the plaintiff.
A major flaw in the patent-danger rule is that it does not take cognizance of the primary reason for the institution of safety features. They are rarely there to protect those who are aware of a risk and voluntarily seek to encounter it.[1] Safety features, be they guards, shields or fences, are of primary importance to protect the inadvertent plaintiff—the one who is not paying attention at the moment of the accident. In fact, the duty to provide safeguards is intended largely to protect against just such expected eventualities. Thus, for example, if a plaintiff were to have tripped and, being unable to steady himself, would have fallen towards the unguarded gears, of *763 what value is it to him that the danger is obvious or patent?[2] Or if a plaintiff, as here, is too young to appreciate that danger lurks within the exposed gears, of what good is it that in the perception of some other perspn the danger is clear?
It is, therefore, no surprise that the pace of the attack against the patent-danger rule from both academic and judicial quarters is becoming ever more insistent and persuasive. Professors Harper and James[3] were among the earliest to expose the weakness of its basic premise: "The bottom does not logically drop out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition. Thus if the product is a carrot-topping machine with exposed moving parts, or an electric clothes wringer dangerous to the limbs of the operator, and if it would be feasible for the maker of the product to install a guard or safety release, it should be a question for the jury whether reasonable care demanded such a precaution, though its absence is obvious. Surely reasonable men might find here a great danger, even to one who knew the condition; and since it was so readily avoidable they might find the maker negligent. Under this analysis the obviousness of a condition will still preclude liability if the obviousness justifies the conclusion that the condition is not unreasonably dangerous; otherwise it would simply be a factor to consider on the issue of negligence.”
Judicial reaction to the patent-danger formulation has been equally critical. As early as 1959 the late Chief Judge Clark of the United States Court of Appeals in a much-quoted dissent argued, then unsuccessfully, that the "Campo and Inman decisions did not shift the basic inquiry as to the reasonable foreseeability of the danger to a. sterile definitional quibble over whether the injury was caused by a 'latent’ or a 'patent’ defect”. (Messina v Clark Equip. Co., 263 F2d 291, 293.) In that case plaintiff’s decedent was killed while operating an earth mover manufactured by defendant. Decedent raised the scissor arms and bucket on the machine in order to allow *764 mechanics to get at a gas leak they were repairing. He then shut off the motor and was getting out of the cab when the bucket fell, crushing him between the scissor arms and the cab. Plaintiff did not claim that there was any latent defect in manufacture. He contended that there was an industry-wide standard among manufacturers of similar machines to provide guards and safety devices to prevent operators from getting into or out of the cab while the scissor arms were raised. The majority of the court, even then, noted the criticism that had been leveled at Campo, but felt bound by its authority. It denied the claim because the danger was patent. The mere recitation of the facts suffices to support the view that Campo has fathered ill-considered progeny. (See, also, Pike v Hough Co. 2 Cal 3d 465.)
While this court’s recent decision in Bolm v Triumph Corp. (33 NY2d 151) weakens the effect of the Inman and Campo cases by abolishing the requirement that latency be pleaded and by shifting the forum for the determination of the patency question from the court as a matter of law to a fact-finding arbiter, usually the jury, I believe the time is now ripe for us to go further.
This is not to suggest that the obviousness of the danger should not be a factor in determining whether the danger is an unreasonable one in any given case. Obviousness most certainly has an important bearing on that issue. This may be for a variety of reasons. Among others, on the one hand, it may serve to warn off possible victims; on the other, it may interdict any claim by the manufacturer that it did not know the propensity of its product to injure. Which is why patency should not be the sine qua non. It should be weighed with all the other factors which go into the determination of reasonable design of a mechanical product in our highly industrialized society. (See Dorsey v Yoder Co., 331 F Supp 753, 765, 767, affd sub nom. Yoder Co. v General Copper & Brass Co., 474 F2d 1339.) Some believe that among such factors should be considered the reasonableness of the cost of achieving the desired safety and the degree of sacrifice, if any, to the utility of the product that may accompany it. Whether such risk-utility balancing is the answer[4] or whether it should be the fostering of the reciprocal fairness between the parties in *765 volved that underlies tort law,[5] advocates of both views are well-nigh universal in their rejection of the continued viability of Campo.[6]
Returning to the case at bar, I believe there is no reason except for allegiance to the patent-danger rule to deny the plaintiff the opportunity to establish that the Gehl hay unloader is unreasonably designed. Perhaps plaintiff will not be able to establish that proposition at trial, but he should not be barred from doing so by an inflexible rule. It may also be that plaintiff can be barred on grounds of contributory negligence or subjective assumption of the risk.
Even if he were an adult, the extent to which he appreciated the risk, though visible, would call for the application of subjective standards relating to such matters as knowledge, experience and understanding.[7] It would also involve an appreciation of the common human tendency, based on psychological and other reasons to underestimate the possibility of any injury occurring or to minimize the probability of seriousness of the injury if one does occur or, not least of all, to assume that only others are inattentive enough for it to happen to them. All these are barriers to the consciousness of risk. Be that as it may, that issue of contributory negligence should not be determined at this stage of the litigation, especially as to this plaintiff, whose age introduces still another factor to be weighed in the equation.[8]
Finally, a further word with regard to the contention that it is unforeseeable that a six-year old would get his hand caught in a hay unloader machine. Can we state as a matter of law that children are not to be expected around family farms or that this type of accident is a phenomenon never to be anticipated?[9]
The issue here has arisen on a motion for summary judgment directly presented by both sides on the simple, unvar *766 nished patent-latent issue. Unless plaintiff is barred by unswerving adherence to the old doctrine, there is no hint that he cannot, on the merits, establish to the satisfaction of a court or jury that it was well within the range of foreseeability for him to be injured as a result of the use of the hayloader under the circumstances prevailing in this case. Accordingly, I believe the order should be reversed and the motion denied.
Order affirmed, etc.

. See Restatement, Torts 2d, § 402A, comment n; Noel, Defective Products: Abnormal Use, Contributory Negligence and Assumption of Risk, 25 Vand L Rev 93; cf. Twerski, Old Wine in a New Flask—Restructuring Assumption of Risk in the Products Liability Era, 60 Iowa L Rev 1, 31.

. See Patten v Logemann Bros. Co. (263 Md 364).

. Harper & James, Law of Torts, § 28.5, p 1543; see, also, Frumer and Friedman, Products Liability, § 7.02; Noel, Manufacturer’s Negligence of Design or Directions for Use of a Product, 71 Yale LJ 816, 838; Note, Open and Obvious Nature of a Design Defect Does Not Necessarily Preclude Manufacturer’s Liability, 49 Tex L Rev 591; Marschall, An Obvious Wrong Does Not Make a Right: Manufacturers’ Liability for Patently Dangerous Products, 48 NYU L Rev 1065.

. See Wade On the Nature of Strict Tort Liability for Product, 44 Miss LJ 825, 837; Donaher, Piehler, Twerski and Weinstein, Technological Expert in Products Liability Litigation, 52 Tex L Rev 1303.

. Fletcher, Fairness and Utility in Tort Theory, 85 Harv L Rev 537, 538-539.

. Marschall, 48 NYU L Rev 1065, 1079-1081, n 3.

. Noel, Defective Products: Abnormal Use, Contributory Negligence and Assumption of Risk, 25 Vand L Rev 93, 121-128.

. The age of this plaintiff is very restrictive of the probability of such a finding. (Verni v Johnson 295 NY 436; Kennedy v Cromer, 34 AD2d 859.) This caveat with regard to contributory negligence is on the assumption that the doctrine of contributory negligence does not soon yield to early legislative or judicially-decreed reform. (See Codling v Paglia, 32 NY2d 342.)

. Phillips, Products Liability for Personal Injury to Minors, 56 Va L Rev 1223, 1225.