SEDAR, APPELLANT, *v.* KNOWLTON CONSTRUCTION COMPANY, N.K.A. ARGA COMPANY, ET AL., APPELLEES.

[Cite as Sedar *v.* Knowlton Constr. Co. (1990), 49 Ohio St. 3d 193.]

(No. 88-1569—Submitted October 25, 1989—Decided March 7, 1990.)

*Dworken & Bernstein Co., L.P.A.,* and *Patrick J. Perotti,* for appellant.

*Taft, Stettinius & Hollister, James M. Hall, Jr.* and *Mark A. Ferguson,* for appellee Knowlton Construction Co.

*McNeal, Schick, Archibald & Biro Co., L.P.A., Fredric E. Kramer* and *Richard R. Kuepper,* for appellee Larson & Nassau.

*Keith McNamara,* urging affirmance for *amicus curiae,* Ohio Building Chapter, AGC.

*Arter & Hadden, Curtiss L. Isler* and *Irene C. Keyse-Walker,* urging affirmance for *amicus curiae,* Otis Elevator Co. and Montgomery Elevator Co.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Robert G. Stafford* and *Amy J. Girvin,* urging affirmance for *amici curiae,* Ohio Assn. of Consulting Engineers, American Consulting Engineers Council, National Society of Professional Engineers, Ohio Society of Professional Engineers, American Institute of Architects and Architects Society of Ohio.

*Millisor & Nobil Co., L.P.A.,* and *Roger L. Sabo,* urging affirmance for *amicus curiae,* Ohio Contractors Assn.

*Kaufman & Cumberland, Frank J. Cumberland, Kelly Dowling Stimpson, David P. Lodwick* and *Thomas L. Feher,* urging reversal for *amicus curiae,* King James South Danford Square Condominium Unit Owners Assn., Inc.

*Casper & Casper* and *Michael R. Thomas,* urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers.

HOLMES, J. We are asked in this case to decide whether R.C. 2305.131 may constitutionally prevent the accrual of actions sounding in tort against architects, construction contractors and others who perform services related to the design and construction of improvements to real property, where such action arises more than ten years following the completion of such services. For the reasons which follow, and as applied to bar the claims of appellant herein, we answer such query in the affirmative.

I

R.C. 2305.131 provides:

"No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction. This limitation does not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought."

This ten-year statute of repose applies to architects, construction contractors and others who supply services in the design, planning, supervision of construction or construction of buildings and other improvements to real property. Unlike a true statute of limitations, which limits the time in which a plaintiff may bring suit *after* the cause of action accrues, a statute of repose, such as R.C. 2305.131, potentially bars a plaintiff's suit *before* the cause of action arises. Comment, The Constitutionality of Statutes of Repose: Federalism Reigns (1985), 38

Vand. L. Rev. 627, 629; *Hartford Fire Ins. Co.* v. *Lawrence, Dykes, Goodenberger, Bower & Clancy* (C.A. 6, 1984), 740 F. 2d 1362, 1367; *Hardy* v. *VerMeulen* (1987), 32 Ohio St. 3d 45, 46, 512 N.E. 2d 626, 627, fn. 2.

Construction statutes of repose, such as R.C. 2305.131, were enacted by several states in the late 1950s and early 1960s in response to the expansion of common-law liability of architects and builders to third parties who lacked "privity of contract." *Hartford Fire Ins. Co., supra,* at 1368; *Kocisko* v. *Charles Shutrump & Sons Co.* (1986), 21 Ohio St. 3d 98, 101, 21 OBR 392, 394, 488 N.E. 2d 171, 174 (Wright, J., dissenting).[1] Generally, the only contracts involved in this context are the ones between the architect and the owner and between the contractor and the owner.[2] At early common law, courts strictly applied the doctrine of privity of contract and denied recovery to a third party who, after a structure had been completed and accepted by an owner, sought recovery from the architect or builder involved for injuries allegedly sustained as a result of a defective or unsafe condition of such structure. Annotation (1979), 93 A.L.R. 3d 1242, 1245-1246; *Winterbottom* v. *Wright* (1842), 10 M & W 109, 152 Eng. Reprint 402.

"The general rule of law, subject to certain exceptions not now material to note, is that, after the contractor has turned over the work and it has

---

[1] See, generally, Comment, Limitation of Action Statutes for Architects and Builders — Blueprints for Non-action (1969), 18 Cath. U.L. Rev. 361; Annotation (1979), 93 A.L.R. 3d 1242, 1245-1247. By 1978, at least forty-three states and the District of Columbia had enacted statutes limiting the time within which suits against architects must be brought. Collins, Limitations of Action Statutes for Architects and Builders — An Examination of Constitutionality (1978), 29 Fedn. Ins. Counsel Q. 41, 45.

[2] Note, The Crumbling Tower of Architectural Immunity: Evolution and Expansion of the Liability to Third Parties (1984), 45 Ohio St. L.J. 217, 219.

been accepted by the owner, the contractor incurs no further liability to third persons by reason of the condition of the work, but the responsibility for maintaining it and protecting third persons against danger therefrom, or the use of it in a defective condition, or failing to give notice or warning of dangers to be apprehended from its existence, is then shifted to the owner. This rule of law does not seem to be disputed; in fact, counsel for both parties cite and rely in part on the same cases. * * *'' (Citations omitted.) *Williams* v. *Edward Gillen Dock, Dredge & Constr. Co.* (C.A. 6, 1919), 258 F. 591, 594.

In Ohio, the law of privity was even more stringent, limiting liability to those in actual control or possession of premises, be they owners or lessees of the owner. See *Burdick* v. *Cheadle* (1875), 26 Ohio St. 393; *Berkowitz* v. *Winston* (1934), 128 Ohio St. 611, 1 O.O. 269, 193 N.E. 343, paragraph two of the syllabus ("[l]iability in tort is an incident to occupation or control * * *").

Nationally, the fall of the privity doctrine began generally with the landmark decision in *MacPherson* v. *Buick Motor Co.* (1916), 217 N.Y. 382, 111 N.E. 1050, and specifically with respect to the construction industry in *Inman* v. *Binghamton Housing Auth.* (1957), 3 N.Y. 2d 137, 164 N.Y. Supp. 2d 699, 143 N.E. 2d 895, which held that privity of contract was no longer required for an injured party to recover for negligent architectural design. *Id.* at 144, 164 N.Y. Supp. 2d at 703-704, 143 N.E. 2d at 899. Although many jurisdictions which had judicially considered the issue abolished the privity doctrine in negligence actions against an architect, see Note, The Crumbling Tower of Architectural Immunity, *supra,* at 221, this court has not had occasion to consider the continued validity of the privity doctrine with respect to third persons who are injured due to an allegedly defective or unsafe building design or construction. Indeed, when R.C. 2305.131 was enacted in 1963, the strict privity doctrine remained intact in Ohio. Accordingly, in *Insurance Co. of North America* v. *Bonnie Built Homes* (1980), 64 Ohio St. 2d 269, 18 O.O. 3d 458, 416 N.E. 2d 623, this court held as syllabus law that "[p]rivity of contract is a necessary element of an action brought by an owner of a real-property structure against the builder-vendor of the structure for damages proximately caused by unworkmanlike construction." See, also, *Velotta* v. *Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St. 2d 376, 23 O.O. 3d 346, 433 N.E. 2d 147.

It was not until 1983 that this court, in *McMillan* v. *Brune-Harpenau-Torbeck Builders, Inc.* (1983), 8 Ohio St. 3d 3, 8 OBR 73, 455 N.E. 2d 1276, at syllabus, overruled *Bonnie Built Homes, supra,* holding: "Privity of contract is not a necessary element of an action in negligence brought by a vendee of real property against the builder-vendor." However, as stated, this court has not had occasion to recognize a similar cause of action against builders or architects brought by third parties other than vendees. Although R.C. 2305.131, as enacted, does encompass such actions, we express no specific opinion concerning such issue, as the sole question before us here is the constitutionality of the provision for repose contained in such section of law.

R.C. 2305.131, by its express terms, does not apply to persons in actual possession and control of premises at the time the unsafe and defective condition proximately causes the injury or damage complained of, and appears to recognize the common-law

liability of such persons. Impliedly, the statute also does not apply to any person who supplies materials, rather than services, to be used in the construction of an improvement to real property, as he may be liable for damages caused by defects in the materials under Section 402A of the Restatement of the Law 2d, Torts (1965). Cf. *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227, 35 O.O. 2d 404, 218 N.E. 2d 185. In addition, R.C. 2305.131 applies only to actions sounding in tort, as actions on the contract between an owner and the architect or builder continue to be governed by the fifteen-year statute of limitations found in R.C. 2305.06. *Kocisko, supra,* at syllabus.

Finally, unlike the four-year statute of repose for medical malpractice actions, R.C. 2305.11(B),[3] which begins to run from the date of malpractice (the date of "the act or omission constituting the alleged basis of the * * * claim"), the ten-year repose period of R.C. 2305.131 begins to run upon the completion of performance of the construction-related services. The designation of this triggering event is consonant with the common-law rule shifting liability towards third persons to the owner of a building upon acceptance of the design and construction of such building. The completion of performance of the services of both appellees in this case, the architect and builder, occurred no later than December 31, 1966. Appellant's injuries occurred on September 11, 1985, over eighteen and one-half years after the repose period began to run. Appellant now challenges the constitutionality of R.C. 2305.131, which clearly bars his action in negligence for personal injuries against these appellees.

II

As a prelude to his constitutional challenges, appellant asserts, without argument, that a sort of "discovery rule" of accrual, analogous to the medical malpractice discovery rule,[4] applies to him and other third persons who assert that their injuries are caused by a "static condition" (the existence of door glass which is "defective" in the sense that it is not safety glass). He cites our decision in *Velotta, supra,* in support of this assertion.

Appellant has misconstrued our statements in *Velotta,* and the nature

---

[3] R.C. 2305.11(B) has been held unconstitutional on various grounds and as applied to various factual circumstances: *Schwan* v. *Riverside Methodist Hosp.* (1983), 6 Ohio St. 3d 300, 6 OBR 361, 452 N.E. 2d 1337 (statute violates equal protection with respect to minors); *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 28 OBR 346, 503 N.E. 2d 717 (statute violates due course of law provision of Ohio Constitution with respect to minors); *Hardy, supra* (statute violates right-to-a-remedy provision of Ohio Constitution with respect to plaintiffs who did not know or could not reasonably have known of their injuries); *Gaines* v. *Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54, 514 N.E. 2d 709 (statute unconstitutional with respect to plaintiffs who, following discovery, do not have the time provided by R.C. 2305.11[A] in which to file their actions).

[4] Ostensibly, the "discovery rule" cited by appellant is found in *Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198, 61 O.O. 2d 430, 290 N.E. 2d 916, wherein we held, at syllabus:

"Where a metallic forceps and a nonabsorbent sponge are negligently left inside a patient's body during surgery, the running of the statute of limitation governing a claim therefor is tolled until the patient discovers, or by the exercise of reasonable diligence should have discovered, the negligent act."

of his cause of action. The medical malpractice cases are wholly distinguishable. In order to establish actionable negligence, three essential elements must be shown: (1) a duty to protect another from foreseeable injury; (2) a breach of or failure to discharge such duty; and (3) an injury to such other proximately resulting from that failure or breach. *Wellman* v. *East Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E. 2d 629, paragraph three of the syllabus. A cause of action generally accrues immediately upon the occurrence of all these elements. In the medical malpractice cases, the latter elements, *i.e.*, breach of duty and injury proximately resulting therefrom, occur simultaneously, or nearly so. However, such negligence often remains undiscovered, and we have held that the running of the statute of limitations is tolled until the patient discovers, or should have discovered, the negligent act (*Melnyk* v. *Cleveland Clinic* [1972], 32 Ohio St. 2d 198, 61 O.O. 2d 430, 290 N.E. 2d 916, syllabus ["foreign object" cases]) or the resulting injury (*Oliver* v. *Kaiser Community Health Found.* [1983], 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438, syllabus).

In the construction cases, however, breach of duty and injury may often be separated by several years. Thus, in *Velotta, supra*, although the vendee alleged that the builder-vendor had negligently installed the tile around his residence, purchased in December 1970, the vendee did not experience any damaging water drainage problems until "sometime in 1975." It is axiomatic that "[n]egligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. 'Proof of negligence in the air, so to speak, will not do.' * * *" *Palsgraf* v. *Long Island RR. Co.* (1928), 248 N.Y. 339, 341, 162

N.E. 99. Thus in *Velotta, supra*, at 379, 23 O.O. 3d at 348, 433 N.E. 2d at 150, we simply held that for purposes of the four-year statute of limitations set forth in R.C. 2305.09(D), "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs. * * *" The *Velotta* holding is not a "discovery rule." The construction cases deal with the delayed occurrence of damages, not with the "discovery" of injury. The *Velotta* decision is concerned solely with accrual of a cause of action for purposes of a statute of limitations, not with discovery of injury or damages which have already occurred. Our decision in *Velotta* did not discuss or even mention the ten-year statute of repose, R.C. 2305.131.

Nor is "discovery" an issue in the present case. Although faulty design or construction of a building by an architect or builder may constitute a breach of a duty of care owed to all foreseeable occupants of such building, like appellant here, see Prosser & Keeton on Torts (5 Ed. 1984) 723, Section 104A, no such foreseeable plaintiffs have an *actionable claim* in negligence until they are individually, and proximately, damaged by the breach of duty.

Moreover, although the presence of a defect in the design or construction of a structure may cause such immediate damage as a reduction of the structure's economic value, which economic damage the owner may not discover until long after completion of the construction-related services, a third-party occupant, like appellant here, has *no* damage to discover until he is physically injured by the defect. The existence of an actionable claim in the owner of a structure does not portend a contemporaneous claim in all foreseeable occupants of the structure—as a construction-related defect

may never physically injure anyone. "The plaintiff sues in * * * [his] own right for a wrong personal to * * * [him], and not as the vicarious beneficiary of a breach of duty to another." *Palsgraf, supra,* at 342, 162 N.E. at 100. Appellant's assertion of a "discovery rule" in this context is just not applicable.

### III

All legislative enactments enjoy a presumption of constitutionality. *Hardy, supra,* at 48, 512 N.E. 2d at 629; *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61, 4 OBR 150, 151, 446 N.E. 2d 449, 450; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E. 2d 59, paragraph one of the syllabus. When a statute is challenged as unconstitutional, "courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible," such statute. *Dorso, supra,* at 61, 4 OBR at 151, 446 N.E. 2d at 450. Appellant here assails R.C. 2305.131, as it applies to bar his cause of action against appellees, contending it violates the due process and right-to-a-remedy provisions of Section 16, Article I of the Ohio Constitution as well as the equal protection guarantees of Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

Section 16, Article I of the Ohio Constitution provides in part:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

The decisions of this court have interpreted this provision of the Bill of Rights to Ohio's Constitution as providing two distinct guarantees: (1) that legislative enactments may abridge individual rights only "by due course of law," *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 274-276, 28 OBR 346, 349-351, 503 N.E. 2d 717, 720-722; *Gaines* v. *Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54, 59, 514 N.E. 2d 709, 715, a guarantee which is equivalent to that of the Due Process Clause of the Fourteenth Amendment, *Direct Plumbing Supply Co.* v. *Dayton* (1941), 138 Ohio St. 540, 544, 21 O.O. 422, 424, 38 N.E. 2d 70, 72; accord *Hartford Fire Ins. Co., supra,* at 1367; see, also, *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854, paragraph five of the syllabus; and (2) that all courts shall be open to every person with a right to a remedy for injury to his person, property or reputation, with the opportunity for such remedy being granted at a meaningful time and in a meaningful manner. *Hardy, supra,* at 47, 512 N.E. 2d at 628; *Gaines, supra,* at 60, 514 N.E. 2d at 716. Appellant challenges R.C. 2305.131 on both grounds.

"A legislative enactment will be deemed valid on due process grounds '* * * [1] if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary.' * * *'" *Mominee, supra,* at 274, 28 OBR at 349-350, 503 N.E. 2d at 720-721, quoting *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854, at paragraph five of the syllabus. R.C. 2305.131 does bear a real and substantial relation to the general welfare of the public. Although specific legislative history is unavailable for enactments of the Ohio General Assembly, it is apparent, as discussed above, that R.C. 2305.131 was enacted in response to the general demise of the privity requirement and the extension of the liability of an architect or builder to third parties injured by design and construction

defects with whom the architects or builders have no contractual relationship. See, *e.g., Yarbro* v. *Hinton Hotels Corp.* (Colo. 1983), 655 P. 2d 822, 825, and cases cited therein; *Hartford Fire Ins. Co., supra,* at 1368, and cases cited therein; accord *Elizabeth Gamble Deaconess Home Assn.* v. *Turner Constr. Co.* (1984), 14 Ohio App. 3d 281, 287, 14 OBR 337, 344, 470 N.E. 2d 950, 958.

"* * * Given this expanded group of potential claimants and the lengthy anticipated useful life of an improvement to real property, designers and builders were confronted with the threat of defending claims when evidence was no longer available. * * * [R.C. 2305.131] attempt[s] to mitigate this situation by limiting the duration of liability and the attendant risks of stale litigation, a public purpose recognized as permissible under due process analysis. * * *" (Citations omitted.) *Hartford Fire Ins. Co., supra,* at 1368. Because extended liability engenders faded memories, lost evidence, the disappearance of witnesses, and the increased likelihood of intervening negligence, see *Yarbro, supra,* at 825 and *Kocisko, supra,* at

101, 21 OBR at 394, 488 N.E. 2d at 174 (Wright, J., dissenting),[5] the General Assembly, as a matter of policy, limited architects' and builders' exposure to liability by barring suits brought more than ten years after the performance of their services in the design or construction of improvements to real property.

The legislature's choice of ten years to achieve its valid goal of limiting liability here was neither unreasonable nor arbitrary. An oft-quoted study presented to a committee of the United States House of Representatives studying a similar statute of repose for the District of Columbia revealed that 89.7 percent of all claims against architects were brought within five years of completion of the building, *99.6 percent* of all such claims were brought within ten years, and 100 percent of all such claims were brought within fourteen years. See Comment, Limitation of Action Statutes for Architects and Builders, *supra,* at 367. Indeed, a substantial majority of states have found no due process violations in similar statutes,[6] some of which afford periods as brief as four years. See, *e.g.,*

---

[5] See, also, Comment, Developments in the Law — Statutes of Limitations (1950), 63 Harv. L. Rev. 1177, 1185.

[6] Forty-six states and the District of Columbia have enacted construction statutes of repose (the exception being Arizona, Kansas, New York and Vermont). Thirty of these jurisdictions, now including Ohio, have upheld the constitutionality of such statutes under various theories. Five have held their versions to be unconstitutional (Alabama, Alaska, Hawaii, New Hampshire and Wisconsin) and the remaining twelve have not ruled on the constitutionality of their current statutes, as passed or amended (Illinois, Iowa, Kentucky, Maine, Missouri, New Mexico, Oklahoma, South Carolina, South Dakota, Virginia, West Virginia and Wyoming). The following courts have upheld their state's statutes against due process challenges: *Carter* v. *Hartenstein* (Ark. 1970), 455 S.W. 2d 918, appeal dismissed (1971), 401 U.S. 901; *Barnhouse* v. *Pinole* (1982), 133 Cal. App. 3d 171, 183 Cal. Rptr. 881; *Cheswold Volunteer Fire Co.* v. *Lambertson Constr. Co.* (Del. 1984), 489 A. 2d 413; *Beecher* v. *White* (Ind. App. 1983), 447 N.E. 2d 622; *Burmaster* v. *Gravity Drainage Dist. No. 2* (La. 1978), 366 So. 2d 1381; *Klein* v. *Catalano* (1982), 386 Mass. 701, 437 N.E. 2d 514; *O'Brien* v. *Hazelet & Erdal* (1980), 410 Mich. 1, 299 N.W. 2d 336; *Calder* v. *Crystal* (Minn. 1982), 318 N.W. 2d 838; *Reeves* v. *Ille Elec. Co.* (Mont. 1976), 551 P.

*Harmon* v. *Angus R. Jessup Assoc., Inc.* (Tenn. 1981), 619 S.W. 2d 522. See, also, *Klein* v. *Catalano* (1982), 386 Mass. 701, 437 N.E. 2d 514 (upholding a six-year statute of repose barring a college student's action against an architect for lacerations to his hand resulting from the shattering of a plate-glass door in the student center).

We realize that faded memories, lost evidence, unavailable witnesses and intervening negligence hinders plaintiffs, who bear the burden of proving negligence, as well as defendants. We also recognize that R.C. 2305.131 bars *all* claims after ten years, whether meritorious or frivolous. However, we do not sit in judgment of the wisdom of legislative enactments. "* * * [A] court has nothing to do with the policy or wisdom of a statute. That is the exclusive concern of the legislative branch of the government. When the validity of a statute is challenged on constitutional grounds, the sole function of the court is to determine whether it transcends the limits of legislative power." *State, ex rel. Bishop,* v. *Bd. of Edn.* (1942), 139 Ohio St. 427, 438, 22 O.O. 494, 498, 40 N.E. 2d 913, 919. We agree that "[t]he Legislature could reasonably conclude that the statistical improbability of meritorious claims after a certain length of time, * * * and the inability of the courts to adjudicate stale claims weigh more heavily than allowing the

adjudication of a few meritorious claims. * * *" *Klein, supra,* at 710, 437 N.E. 2d at 521, fn. 11. Thus, we hold that R.C. 2305.131 does not violate the due course of law provision of Section 16, Article I of the Ohio Constitution.

Appellant also contends that R.C. 2305.131 violates the "open court" or "right to a remedy" provision of Section 16, Article I, seizing upon our recent analysis of that constitutional provision in the context of the four-year repose statute for medical malpractice actions, R.C. 2305.11(B). See *Hardy, supra; Gaines, supra.* As discussed previously, however, the situation presented in the medical malpractice cases, particularly in *Hardy,*[7] is clearly distinguishable from the situation presented by the operation of R.C. 2305.131. Operation of the medical malpractice repose statute takes away an existing, actionable negligence claim before the injured person discovers it. Thus, "it denies legal remedy to one who has suffered bodily injury, * * *" in violation of the right-to-a-remedy guarantee. *Hardy, supra,* at 48, 512 N.E. 2d at 629.

In contrast, R.C. 2305.131 does not take away an existing cause of action, as applied in this case. "* * * [I]ts effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the

---

2d 647; *Williams* v. *Kingery Constr. Co.* (1987), 225 Neb. 235, 404 N.W. 2d 33; *Rosenberg* v. *North Bergen* (1972), 61 N.J. 190, 293 A. 2d 662; *Suburban Homes* v. *Austin-Northwest Dev. Co.* (Tex. App. 1987), 734 S.W. 2d 89.

[7] We are not presented in this case with the circumstances which faced us in *Gaines, supra.* There, a medical malpractice plain-

tiff discovered her claims *within* the four-year repose period, but at such a time that less than a year (provided by the statute of limitations, R.C. 2305.11[A]) remained for pursuit of such claim. Because the plaintiff was denied a *meaningful time* in which to pursue her remedy, the author of the majority opinion invalidated the application of the repose statute to her. *Id.* at 60, 514 N.E. 2d at 715-716. See, also, *Lafferty* v. *Shinn* (1882), 38 Ohio St. 46, 48.

harm, forms no basis for recovering. The injured party literally has *no* cause of action. * * *'' (Emphasis *sic.*) *Rosenberg* v. *North Bergen* (1972), 61 N.J. 190, 199, 293 A. 2d 662, 667.

A majority of state constitutions contain a "right-to-a-remedy" provision, which provision is traceable to the common-law precept *ubi jus ibi remedium* — there is no wrong without a remedy. Comment, State Constitutions' Remedy Guarantee Provisions Provide more than Mere "Lip Service" to Rendering Justice (1985), 16 Tol. L. Rev. 585, 588. Originating in the Magna Carta (1225), 9 Hen. 3, c. 29, this maxim was incorporated into Ohio's original Constitution of 1802, at Section 7, Article VIII, and was melded into the federal common law by the decision in *Marbury* v. *Madison* (1803), 5 U.S. (1 Cranch) 137, 163:

"The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a *vested legal right.*" (Emphasis added.)

This court has similarly recognized the proper scope of Ohio's right-to-a-remedy provision. As recently stated in the *Hardy* decision, this court has never taken the position "that causes of action as they existed at common law or the rules that govern such causes are immune from legislative attention. As this court said in *Fassig* v. *State, ex rel. Turner* (1917), 95 Ohio St. 232, 248, 116 N.E. 104, 108:

" 'No one has a vested right in rules of the common law. Rights of property vested under the common law cannot be taken away without due process, but the law itself as a rule of conduct may be changed at the will of the legislature unless prevented by constitutional limitations. The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to new circumstances. * * *' " (Emphasis omitted.) *Hardy, supra,* at 49, 512 N.E. 2d at 630. Indeed, several state courts construing similar right-to-a-remedy provisions concur in this view:

"Societal conditions occasionally require the law to change in a way that denies a plaintiff a cause of action available in an earlier day. * * * 'This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the "common law" and certain non-constitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and the flexibility required for the healthy growth of the law.' " *Klein, supra,* at 712-713, 437 N.E. 2d at 522, quoting *Freezer Storage, Inc.* v. *Armstrong Cork Co.* (1978), 476 Pa. 270, 280-281, 382 A. 2d 715, 721. See, also, *Hartford Fire Ins. Co., supra,* at 1369-1370, and cases cited therein.

The right-to-a-remedy provision of Section 16, Article I applies only to existing, vested rights, and it is state law which determines what injuries are recognized and what remedies are available. Accord *Hartford Fire Ins. Co., supra,* at 1370. R.C. 2305.131, as applied to bar the claims of appellant here, whose injury occurred over eight years after the expiration of the statute of repose, does not violate Section 16, Article I of the Ohio Constitution.

Appellant lastly argues that R.C. 2305.131, which cuts off the tort liability of architects and builders after ex-

piration of ten years — but does not so limit the liability of owners and materialmen — violates the equal protection guarantees of the Ohio and federal Constitutions. We do not agree.

The limitations placed upon the legislature by the state and federal equal protection provisions "are essentially identical," *Beatty* v. *Akron City Hosp.* (1981), 67 Ohio St. 2d 483, 491, 21 O.O. 3d 302, 307, 424 N.E. 2d 586, 591-592, and "require the existence of reasonable grounds for making a distinction between those within and those outside a designated class. * * *" *Id.* at 491, 21 O.O. 3d at 307, 424 N.E. 2d at 592. Where, as here, the legislative distinctions do not affect a "suspect class" or infringe upon a fundamental right, and impinge on mere economic interests, courts apply a rational basis test: " '[U]nequal treatment of classes of persons by a state is valid only if the state can show that a rational basis exists for the inequality * * *.' " *Id.* at 492, 21 O.O. 3d at 307, 424 N.E. 2d at 592, quoting *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368, 373, 12 O.O. 3d 327, 330, 390 N.E. 2d 813, 818. See, also, *Schweiker* v. *Wilson* (1981), 450 U.S. 221, 230; *Lyle*

*Constr., Inc.* v. *Div. of Reclamation* (1987), 34 Ohio St. 3d 22, 26, 516 N.E. 2d 209, 213.

The United States Supreme Court has dismissed appeals from at least two state court decisions upholding similar architect-builder statutes of repose, on the grounds that no substantial federal question was presented. See *Hartford Fire Ins. Co.*, *supra*, at 1366, and cases cited therein. A dismissal for lack of a substantial federal question is a decision on the merits, *Hicks* v. *Miranda* (1975), 422 U.S. 332, 344, and is at least some authority that these statutes do not violate the federal Constitution. See *Mandel* v. *Bradley* (1977), 432 U.S. 173, 179-180 (Brennan, J., concurring). Accord *Shibuya* v. *Architects Hawaii Ltd.* (1982), 65 Haw. 26, 44, 647 P. 2d 276, 288, fn. 15; *State Farm Fire & Cas. Co.* v. *All Electric, Inc.* (Nev. 1983), 660 P. 2d 995, 998, fn. 2. Moreover, the vast majority of states have upheld similar architect-builder statutes of repose, holding the legislative classifications therein were based on valid distinctions.[8]

We find such authority persuasive. Owners, tenants and others actually in possession of improvements to real

---

[8] The following jurisdictions have upheld their construction statutes of repose against equal protection challenges: *Carter* v. *Hartenstein* (Ark.), *supra*; *Barnhouse* v. *Pinole* (Cal.), *supra*; *Yarbro* v. *Hilton Hotels Corp.* (Colo.), *supra*; *Zapata* v. *Burns* (Conn. 1988), 542 A. 2d 700; *Cheswold Volunteer Fire Co.* (Del.), *supra*; *Britt* v. *Schindler Elevator Corp.* (D.D.C. 1986), 637 F. Supp. 734; *Mullis* v. *Southern Company Services, Inc.* (Ga. 1982), 296 S.E. 2d 579; *Twin Falls Clinic & Hosp. Bldg. Corp.* v. *Hamill* (Idaho 1982), 644 P. 2d 341; *Beecher* v. *White* (Ind.), *supra*; *Burmaster* v. *Gravity Drainage Dist. No. 2* (La.), *supra*; *Whiting-Turner Contracting Co.* v. *Coupard* (Md. 1985), 499 A. 2d 178; *Klein* v.

*Catalano* (Mass.), *supra*; *O'Brien* v. *Hazelet & Erdal* (Mich.), *supra*; *Reich* v. *Jesco, Inc.* (Miss. 1988), 526 So. 2d 550; *Reeves* v. *Ille Elec. Co.* (Mont.), *supra*; *Williams* v. *Kingery Constr. Co.* (Neb.), *supra*; *Wise* v. *Bechtel Corp.* (Nev. 1988), 766 P. 2d 1317; *Rosenberg* v. *North Bergen* (N.J.), *supra*; *Lamb* v. *Wedgewood South Corp.* (N.C. 1983), 302 S.E. 2d 868; *Bellemare* v. *Gateway Builders, Inc.* (N.D. 1988), 420 N.W. 2d 733; *Harmon* v. *Angus R. Jessup Assoc., Inc.* (Tenn. 1981), 619 S.W. 2d 522; *Suburban Homes* (Tex. App.), *supra*; *Yakima Fruit & Cold Storage Co.* v. *Central Heating & Plumbing Co.* (Wash. 1972), 503 P. 2d 108.

property, who are expressly excluded from operation of the statute, have continuing control of the premises and are responsible for their repair and maintenance. In contrast, architects and builders have no control over the premises once they are turned over to the owner, after which time "* * * there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement. * * *" *Burmaster* v. *Gravity Drainage Dist. No. 2* (La. 1978), 366 So. 2d 1381, 1385. "The owner or tenant may * * * use the premises for a purpose for which it was not designed, or make defective alterations which may appear to be a part of the original construction. * * *" *Howell* v. *Burk* (1977), 90 N.M. 688, 694, 568 P. 2d 214, 220. The legislation could reasonably and logically distinguish between these roles, and conclude that architects and builders should thus not be held liable indefinitely, as discussed above. Accord *Harmon, supra,* at 525.

Similarly, the differences in work conditions provide a rational basis for limiting the liability of architects and builders, but not materialmen:

"* * * Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factory. On the other hand, the architect or contractor can pre-test and standardize construction designs and plans only in a limited fashion. In addition, the inspection, supervision and observation of construction by architects and contractors involv[e] individual expertise not susceptible of the quality control standards of the factory. * * *" *Burmaster, supra,* at 1386. Accord *Klein, supra,* at 716, 437

N.E. 2d at 524; *Yarbro, supra,* at 828; *Hartford Fire Ins. Co., supra,* at 1372.

Moreover, some courts have upheld these distinctions as "necessary to encourage * * * [architects and builders] to experiment with new designs and materials. * * *" *Klein, supra,* at 717, 437 N.E. 2d at 524. "* * * Design creativity might be stifled if architects and engineers labored under the fear that every untried configuration might have unsuspected flaws that could lead to liability decades later." *O'Brien* v. *Hazelet & Erdal* (1980), 410 Mich. 1, 18, 299 N.W. 2d 336, 342.

Appellant argues, however, that none of these justifications applies here, where a "static condition" is involved. This argument is meritless, however, as equal protection does not require perfection in making classifications. *Massachusetts Bd. of Retirement* v. *Murgia* (1976), 427 U.S. 307, 314. " '[W]hen legislative authority is exerted within a proper area, it need not embrace every conceivable problem within that field. The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. * * *' " *Jewel Cos., Inc.* v. *Burlington* (1974), 365 Mass. 274, 279, 311 N.E. 2d 539, 542, quoting *Mobil Oil Corp.* v. *Atty. Gen.* (1972), 361 Mass. 401, 417, 280 N.E. 2d 406, 417. The General Assembly is not required, under the rubric of equal protection, to choose between dealing with all aspects of a problem or not dealing with it at all. *Dandridge* v. *Williams* (1970), 397 U.S. 471, 486-487. Where, as here, the classifications made by the General Assembly are rational and not arbitrary, the requirements of equal protection are satisfied. Accord *Hartford Fire Ins. Co., supra,* at 1373, fn. 15. Here, as in the area of due process, this court "may not sit as a superlegislature to judge the wisdom or desirabil-

ity of legislative policy determinations * * *; in the local economic sphere, it is only the *invidious* discrimination, the *wholly* arbitrary act, which cannot stand consistently with the Fourteenth Amendment. * * *'' (Emphasis added.) *City of New Orleans* v. *Dukes* (1976), 427 U.S. 297, 303-304.

We hold that R.C. 2305.131 does not violate the equal protection guarantees of the Ohio and United States Constitutions by limiting the liability of architects and builders without corresponding limits on the liability of occupiers of improvements to real property and materialmen supplying materials used in the construction of such improvements. Because we also have held that the statute does not violate either the due process or right-to-a-remedy provisions of Section 16, Article I of the Ohio Constitution, we thus affirm the court of appeals.

*Judgment affirmed.*

MOYER, C.J., WRIGHT and H. BROWN, JJ., concur.

RESNICK, J., concurs in the syllabus and judgment only.

SWEENEY and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. Section 16, Article I of the Ohio Constitution provides in relevant part:

"*All courts shall be open, and every person, for an injury done him in his* land, goods, *person*, or reputation, *shall have remedy* by due course of law, *and shall have justice administered without denial* or delay.'' (Emphasis added.)

Section 16, Article I of the Ohio Constitution is clear and unambiguous. The courthouse doors are to be open to an individual who suffers an injury to his person. The individual has a right to a remedy for his injuries and to have justice administered without denial.

In the case at bar, Sedar suffered severe injuries to his person. However, Sedar was *denied a remedy* for his injuries because R.C. 2305.131, a statute of repose, effectively barred his pursuit of a remedy before his injuries even occurred.

The majority attempts to distinguish the present case from our recent analysis of Section 16, Article I in the context of the four-year repose statute for medical malpractice actions, R.C. 2305.11(B). In doing so, the majority states that the medical-repose statute takes away an existing actionable claim before the injured party discovered his claim and, therefore, denies a legal remedy to one who has suffered injury to his person, thereby violating Section 16, Article I. In contrast, says the majority, R.C. 2305.131 does not take away an existing cause of action from Sedar but, rather, prevents the cause of action from ever arising. Hence, reasons the majority, denial of a future legal remedy to one who has not yet suffered bodily injury does not violate Section 16, Article I when the injury actually occurs. I fail to see the distinction! This is circuitous reasoning at its best.

Section 16, Article I should not be read so as to discriminate between *how* a violation of its protections occurs. R.C. 2305.131 effectively closes the courthouse to Sedar and individuals like him in contravention of the express language of Section 16, Article I, thereby violating constitutionally protected rights. Therefore, in my judgment, R.C. 2305.131 is unconstitutional.

Accordingly, I dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.