JOURNAL ENTRY AND OPINION
Plaintiff-appellant Shaker Courts Condominium Unit Owners Association, Inc. ("Association") appeals from the granting of summary judgment in favor of three defendants-appellees-movants, namely, (1) Construction Resources, Inc. ("CRI"), (2) Industrial Energy Systems, Inc. ("Industrial"), and (3) American Hydrotech, Inc. ("Hydrotech"). In the three half-sheet status form entries granting summary judgment to each of these parties, the trial court noted, without further explanation, that the claims against these defendants were not filed within the applicable statute of limitations. For the reasons adduced below, we affirm.[1]
A review of the record on appeal indicates that Fostoria Management Company ("Developer")[2] purchased from Shaker Courts Partners the Shaker Courts Apartments located at 13700 Shaker Boulevard in 1984 with the intent of converting the apartment units into condominiums. In October of 1984, the Developer retained the services of CRI to inspect the roofing of the entire complex and provide recommendations for the re-roofing of the thirty-three (33) roofs on the property. As the construction manager of the re-roofing project, CRI designed the specifications for the new roofing system and oversaw the installation of the new roofing.[3] During the bidding process, Industrial proved to be the low bidder on the roofing project. Industrial executed a contract with the Developer on December 10, 1984. Industrial commenced work on the project on February of 1985 and concluded work on May 30, 1985. The roofing materials used in the project were purchased from Hydrotech.
On August 12, 1985, the Declaration for Condominium Ownership was filed with the County Recorder's Office at Volume 58-4548, page 33, et seq.[4] This filing made the Association responsible for maintenance, repair and replacement of common areas on the property, which includes the roofs of the units.
On February 18, 1994, the Association filed its original Complaint alleging breach of implied warranties of workmanship, breach of express warranties, and breach of contract. This Complaint was dismissed without prejudice and refiled on November 1, 1994.
The subject motions for summary judgment were granted by the trial court on August 20 and September 15, 1998, solely on the grounds that the lawsuit had not been filed within the applicable statute of limitations. The notice of appeal from these orders was filed on October 13, 1998.
Three assignments of error, which address the application of periods of limitation for the various claims for relief, are presented for review.
 I THE TRIAL COURT ERRED IN GRANTING APPELLEES, AMERICAN HYDROTECH, CONSTRUCTION RESOURCES AND INDUSTRIAL ENERGY'S MOTIONS FOR SUMMARY JUDGMENT BECAUSE THE ASSOCIATION FILED ITS CLAIMS FOR THE APPELLEES' FAILURE TO PERFORM IN A WORKMANLIKE MANNER WITHIN FOUR YEARS FROM WHEN ACTUAL INJURY OCCURRED AND/OR DAMAGE ENSUED.
The standard of review relative to a summary judgment ruling was recently stated by this court:
 The standard for granting a motion for summary judgment is set forth in Civ.R. 56 (C). In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must show that: (1) there is no genuine issue of fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 667 N.E.2d 1197; Welco Industries, Inc. v. Applied Cas. (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129; Osborne v. Lyles (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.
 A motion for summary judgment forces the non-moving party to produce evidence on issues for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, syllabus. The non-movant must also present specific facts and may not merely rely upon the pleadings or upon unsupported allegations. Shaw v. Pollack Co. (1992), 82 Ohio St.3d 656. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56 (E), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56 (C) to show that there is a genuine issue for trial. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 375 N.E.2d 46.
 In Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court discussed the standard to be applied when reviewing motions for summary judgment. The court stated:
 Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, e.g., Civ.R. 56 (A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56 (C).
Id. at 298, 662 N.E.2d 264.
 The court's analysis of an appeal from a summary judgment is conducted under a de novo standard of review. See Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; Howard v. Willis (1991), 77 Ohio App.3d 133, 601 N.E.2d 515. No deference is given to the decision under review, and this court applies the same test as the trial court. Bank One of Portsmouth v. Weber (Aug. 7, 1991), Scioto App. No. 1920, unreported.
Tagliarina v. Tumino (Oct. 28, 1999), Cuyahoga App. No. 74962, unreported, 1999 WL 980597, at 2-3.
In arguing this assignment, the Association seeks to apply an "actual injury or damage" standard as applied in Sedar v.Knowlton Constr. Co. (1990), 49 Ohio St.3d 193, 198, citingVelotta v. Leo Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376, to commence the running of the statute of limitations. Thus, according to the Association, the injury did not occur, and the statute of limitations did not commence to run, until after May of 1990 when the seams to the roofing membrane were not successfully repaired, or in 1993 when it was acknowledged by Hydrotech that the membrane seams could not be repaired. See Appellant's brief at 10-11. The Association's reliance upon this "actual injury or damage" standard is misplaced. Subsequent to the briefing in this appeal, the "actual injury or damage" rule applied by Sedar was subsequently changed to provide a "discovery rule" in construction cases where, as in the case sub judice,
there is a delayed occurrence of damages. See Harris v. Liston
(1999), 86 Ohio St.3d 203, 206-207. Accordingly, the Association's claim for negligence is governed by "the four-year statute of limitations of R.C. 2305.09 (D)" which "commences to run when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property."[5] Id. at paragraph two of the syllabus.
In the present case, the roofs began to experience leakage problems during the installation of the re-roofing work in 1985. Thereafter, problems with the seams of the roofing membrane were reported to the Association as early as 1986. See deposition of Mrs. Shirley Lane-Gibson (formerly known as Buehner), the Association's property manager, at 49. "Severe water damage" caused by roof leaks was also reported in fourteen units (average damage per unit of $3,200), and acted upon by the Association's property manager, in the four-year period of 1987 through 1990. See the letter of May 10, 1991 authored by the Association's property manager. By virtue of this history of roofing failure and resulting damage to the property, the statute of limitations commenced running prior to February 18, 1990 (the date being four years prior to the filing of the original Complaint), and the trial court did not err in granting summary judgment based upon the four-year statute of limitations having expired.
The first assignment of error is overruled.
The second and third assignments will be discussed jointly since they argue similar claims.
 II THE TRIAL COURT ERRED IN GRANTING APPELLEES, AMERICAN HYDROTECH, CONSTRUCTION RESOURCES AND INDUSTRIAL ENERGY'S MOTIONS FOR SUMMARY JUDGMENT BECAUSE THE ASSOCIATION FILED BREACH OF CONTRACT CLAIMS WITHIN THE APPLICABLE STATUTE OF LIMITATIONS.
 III THE TRIAL COURT ERRED IN GRANTING APPELLEE, AMERICAN HYDROTECH'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE ASSOCIATION FILED ITS COMPLAINT EIGHT YEARS AFTER INSTALLATION OF ROOFS WITH EXPRESS TEN AND FIFTEEN YEAR WARRANTIES.
In granting summary judgment, the trial court solely stated that the claims were barred by the applicable statute of limitations. Appellant argues that the trial court erred in granting summary judgment on its claims for breach of contract. Quite clearly, the fifteen-year statute of limitations for an action for breach of a written contract, contained in R.C.2305.06, had not expired as of the time of the filing of the original Complaint. Therefore, the trial court must have concluded that the Association, who was not a party to the construction contracts in issue, lacked privity of contract; otherwise, the breach of contract statute of limitations argument runs in favor of the Association. In reviewing the privity issue on appeal, we note that, despite the trial court's not mentioning privity in its rulings on summary judgment, the issue of privity was argued by the parties in the summary judgment motion practice. Therefore, we may analyze the issue under our de novo
standard of review.
In its argument under this assignment, the Association claims that it was an intended third-party beneficiary to the 1984 written roofing contract between Industrial and the Developer, and, by virtue of this status, was a beneficiary of the warranties contained therein. The Association buttresses its argument that it was an intended beneficiary by claiming application of R.C. 5311.20 and .25 (E) (5), and an actual (alleged) assignment of the warranties to the Association by the Developer by the terms of Article 11 (C) of the Declaration of Condominium Ownership. The appellant-Association further maintains that it was an intended beneficiary to the limited express warranties (a ten-year watertight warranty and a fifteen-year membrane warranty) issued by Hydrotech on the products it supplied to the roofing project.
In addressing the issue of whether the Association is an "intended beneficiary" to the 1984 written contract, we note:
 In Hill v. Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St.3d 36, 40, 521 N.E.2d 780, 784, we adopted Section [638 N.E.2d 577] 302 of the Restatement of the Law 2d, Contracts (1981) 439-440, which provides:
 "`(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
"`* * *
 "`(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'"
 Under this theory, only an intended beneficiary may exert rights to a contract of which he is not a party. The so-called "intent to benefit" test provides that there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract. There must be evidence that the promisee assumed a duty to the third party. Norfolk W. Ry. Co. v. United States (C.A.6, 1980), 641 F.2d 1201.
Trinova Corp. v. Pilkington Bros., P.L.C. (1994), 70 Ohio St.3d 271,277-278.
The record clearly indicates that the contracts for the re-roofing project at Shaker Courts Apartments were awarded, and the project completed, by the end of May in 1985. The Declaration of Condominium Ownership, which created the Association and Shaker Courts Condominiums as a matter of law, was filed over two months later in August of 1985. Contrary to the assertions of the Association, there is nothing in these pre-completion re-roofing project agreements/contracts evidencing an intent by the defendants-appellees and/or promisees to give the Association the benefit of the promised performance.
As to the limited warranty claim against Hydrotech, we note that the statute of limitations for such a U.C.C. — based claim is governed by R.C. 1302.98, and not R.C. 2305.06.[6] Under R.C. 1302.98 (A), the action "must be commenced within four years after the cause of action has accrued . . ." Under R.C. 1302.98
(B), "the cause of action accrues when the breach is or should have been discovered." The language of the limited warranty reflects that it was the intent of the parties to that warranty that such warranty would not extend to anyone but "the Owner." The "Owner" at the time such warranty was issued was the Developer and the management company which engaged the services of Hydrotech; the Association was not in existence at that time. In the alternative, assuming that these warranties extended to the Association as an intended beneficiary, the action was time barred since the breach was discovered, or should have been discovered, more than four years prior to the February 18, 1994 filing of the original Complaint. See the discussion of the first assignment of error, supra.
The Association also attempts to utilize Ohio's Condominium Act [R.C. 5311, et seq.] to demonstrate that the Association can bring an action to enforce a warranty given to the Developer by a third party. The Association principally relies upon R.C. 5311.25
(E), and in particular paragraph (5), which states the following:
 5311.25 LIMITS ON SALES CONTRACTS OF DEVELOPER; DOWN PAYMENT; CHANGE OF CONTROL; MANAGEMENT CONTRACTS; WARRANTIES.
 No developer or agent, directly or indirectly, shall sell or offer to sell a condominium ownership interest in a condominium development unless the condominium instruments pertaining to the development provide that:
 * * * (E) Except as provided in division (E) (4) of this section, the developer has furnished, as a minimum, a two-year warranty covering the full cost of labor and materials for any repair or replacement of roof and structural components, and mechanical, electrical, plumbing, and common service elements serving the condominium property or additional property as a whole, occasioned or necessitated by a defect in material or workmanship and a one-year warranty covering the full cost of labor and materials for any repair or replacement of structural, mechanical, and other elements pertaining to each unit, occasioned or necessitated by a defect in material or workmanship commencing as follows:
 (1) In the case of a condominium development other than an expandable condominium development, the two-year warranty shall commence on the date the deed or other evidence of ownership is filed for record following the sale of the first condominium ownership interest in the development to a purchaser in good faith for value.
 (2) In the case of an expandable condominium development, the two-year warranty shall commence for property submitted by the original declaration on the date the deed or other evidence of ownership is filed for record following the sale of the first condominium ownership interest in the property, and for any additional property submitted by amendment to the declaration, on the date the deed or other evidence of ownership is filed for record following the sale of the first condominium ownership interest in the additional property; in either case to a purchaser in good faith for value.
 (3) The one-year warranty shall commence on the date the deed or other evidence of ownership is filed for record following the first sale of a condominium ownership interest to a purchaser in good faith for value.
 (4) In the case of ranges, refrigerators, washing machines, clothes dryers, hot water heaters, and other similar appliances installed and furnished as part of the unit by the developer, the valid assignment by the developer of the express and implied warranty of the manufacturer satisfies the developer's obligation under this division with respect to such appliances, and the developer's warranty under this division is limited to the installation of the appliances.
 (5) All warranties made to the developer that exceed time periods specified in this division with respect to any part of the units or common areas and facilities shall be assigned to the purchaser. (Emphasis added.)
A reading of R.C. 5311.25 (E) (5) makes clear that: (1) a developer is obliged to assign all warranties exceeding two years to the purchasers of the condominium units; and, (2) such assignment of warranties in excess of two years must be provided by the developer within the condominium instruments pertaining to the development.[7]
The failure of the developer to provide for the assignment of warranties in excess of two years within the condominium instruments gives rise to liability against the developer, not third parties, pursuant to R.C. 5311.27.
The Declaration of Condominium Ownership, at Article 20 (E), provides a two-year warranty for the repair and replacement of roof and structural components occasioned or necessitated by a defect in material or workmanship. The Declaration does not provide any assignment of warranties in excess of two years. Accordingly, since the "condominium instruments" herein do not contain the assignment of warranties in excess of two years, the remedy for such a violation is directed against the developer and not, these appellee-contractors. Accordingly, R.C. 5311.25 (E) does not demonstrate privity by the Association.
The final argument presented by the Association is that the Developer "actually assigned" Industrial's warranties to the Association; a fact allegedly supported by a review of Article 11 (C) of the Declaration of Condominium Ownership. See appellant's brief at 18. Article 11 (C) provides:
 Article 11. Management, Maintenance, Repairs, Alterations and Improvements.
 * * * C. Rights Against Third Parties. The obligation of the Association and of Unit Owners to repair, maintain and replace the portions of the Condominium Property for which they are respectively responsible shall not be limited, discharged or postponed by reason of the fact that any maintenance, repair or replacement may be necessary to cure any latent or patent defects in material or workmanship in the construction, repair, alteration or improvement of the Condominium Property. The undertaking of repair, maintenance or replacement by the Association or Unit Owners shall not constitute a waiver of any rights against any warrantor but such rights shall be specifically reserved.
 Notwithstanding the fact that the Association and/or any Unit Owner may be entitled to the benefit of any guarantee of material and workmanship for any construction defects, or to benefits under any policies of insurance providing coverage for loss or damage for which they are respectively responsible, the existence of construction guarantees or insurance coverage shall not excuse any delay by the Association or any Unit Owner in performing its or his obligations hereunder.
Article 11 (C) does not demonstrate any assignment of rights by the Developer or that the Association was an intended beneficiary of the construction contracts and their respective warranties. Instead, Article 11 (C) merely evidences an obligation of the Association and Unit Owners to make timely repairs and maintenance on portions of the Condominium Property for which they are responsible and that, having done so, the Association or Unit Owners have a reservation of rights to pursue warrantors therein.
The second and third assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
DIANE KARPINSKI, P.J., and LEO M. SPELLACY, J., CONCUR.
 _____________________________ JAMES D. SWEENEY JUDGE
[1] On August 20, 1998, the trial court denied Hydrotech's motion for summary judgment. On September 3, 1998, Hydrotech moved for reconsideration of the denial of summary judgment. On September 15, 1998, upon reconsideration, the trial court granted Hydrotech's motion for summary judgment. Thereafter, appellant filed its notice of appeal on October 13, 1998. On October 19, 1998, six days after the filing of appellant's notice of appeal, Hydrotech, apparently acting without having checked the court docket for a ruling on its motion for reconsideration, filed a separate cross-appeal from the August 20, 1998 denial of its motion for summary judgment. By virtue of the trial court granting Hydrotech's motion for summary judgment upon reconsideration, the cross-appeal by Hydrotech is moot.
[2] Claims against the Developer were dismissed without prejudice by plaintiffs so that a final appealable order could issue. See Denham v. City of New Carlisle (1999), 86 Ohio St.3d 594; R.C. 2505.02; Civ.R. 54 (B).
[3] The new roof system was to be a watertight system consisting of a "fully ballasted .045 mil EDPM membrane installed over two inches of Styrofoam insulation." Appellant's brief at 1.
[4] A copy of the Declaration of Condominium Ownership is in the record on appeal. See Exhibit A attached to the November 20, 1997, motion for summary judgment by third-party defendant Peggy Broder.
[5] The failure "to perform in a workmanlike manner is a tort sounding in negligence . . ." Gardens of Bay Landing Condominiumsv. Flair Builders, Inc. (Cuyahoga, 1994), 96 Ohio App.3d 353,358.
[6] R.C. 2305.06 specifically excludes actions under R.C.1302.98, stating, "Except as provided in sections . . . 1302.98
of the Revised Code . . ."
[7] Pursuant to R.C. 5311.01 (P), the term "condominium instruments" is defined as:
 ". . . the declaration and accompanying drawings and plans, the bylaws of the unit owner's association, any contracts pertaining to the management of condominium property, and all other documents, contracts, or instruments establishing ownership of or exerting control over a condominium property or unit."