OPINION
This is an accelerated calendar appeal taken from a final judgment of the Portage County Court of Common Pleas. Appellant, Gregory Peterson, appeals from the trial court's judgment granting appellee, Coffman and Bender, summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
During the afternoon of February 10, 1997, appellant and his fiancée were in the process of moving when appellant slipped and fell while carrying a couch up a set of external stairs located in a common area leading to the parking lot of their apartment building. As a result of his fall, appellant sustained a knee injury which later required surgery to repair the damage.
On August 6, 1998, appellant filed a complaint alleging that appellee, who was responsible for the management of the apartment building, had been negligent in failing to remove ice and snow from the building's common areas on the day of the accident. After appellant's deposition was taken and the parties engaged in limited discovery, appellee filed a motion for summary judgment with the trial court on March 31, 1999. Appellant filed a brief in opposition on April 27, 1999. After considering the parties' respective arguments, the trial court granted appellee's motion for summary judgment based on its determination that appellee had no duty, as a matter of law, to remove naturally accumulating ice and snow.
From this decision, appellant filed a timely notice of appeal with this court. He now asserts the following assignment of error for our consideration:
 "The trial court erred in granting defendant's motion for summary judgment."
At the outset, we note that summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J.Refrigeration, Inc. (1993), 67 Ohio St.3d 266, 268.
Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner
(1993), 67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
The party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. at 293.
If this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate. Id.
In order to establish an actionable claim for negligence, appellant had to demonstrate the following: (1) appellee owed a duty to him; (2) appellee breached that duty; (3) appellee' breach of duty directly and proximately caused his injury; and (4) he suffered damages. Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563,565; Sedar v. Knowlton Constr. Co. (1990), 49 Ohio St.3d 193,198. See, also, Bond v. Mathias (Mar. 17, 1995), Trumbull App. No. 94-T-5081, unreported, at 6, 1995 Ohio App. LEXIS 979.
In LaCourse v. Fleitz (1986), 28 Ohio St.3d 209, 210, the Supreme Court of Ohio was asked to decide whether a landlord has a duty, at common law or by virtue of R.C. 5312.04(A)(3), to keep common areas of leased premises free of accumulations of ice and snow. The plaintiff in LaCourse was injured after slipping on a patch of ice while entering her apartment. It was undisputed that neither the front patio step nor the walk had been shoveled or salted. As a result, the plaintiff sued her landlord, arguing that the landlord was negligent in failing to maintain the entranceway in a reasonably safe condition.
The court rejected the plaintiff's argument, acknowledging that:
 "The common law of this state has never recognized a duty on the part of landlords to clear naturally accumulating ice and snow from common areas of the leased premises. This court has held that `[t]he dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that a landlord may reasonably expect that a tenant * * * will act to protect himself against them.' DeAmiches v. Popczun (1973), 35 Ohio St.3d 180 * * * , paragraph one of the syllabus. Thus, a landlord is under no duty to take action to mitigate the dangers posed by accumulated ice and snow, and may justifiably assume that the tenant will apprehend the danger and act to ensure his own safety." (Parallel citations omitted.) LaCourse at 210.
The court compared the landlord/tenant situation with that of a business owner or occupier and a business invitee, where it was already well established that there was no liability when a business invitee slipped and fell on natural accumulations of ice and snow. Id. A majority of the court found no compelling reason to judicially impose a duty on a landlord to remove natural accumulations of ice and snow when they had refused in the past to recognize such a duty on the part of business owners and occupiers. Id.
at 211. As with a business owner or occupier, a landlord should be able to justifiably assume that a tenant will appreciate the risks associated with ice and snow and take proper precautions to avoid injury. Id.
As a result, absent a contractual duty assumed in the lease itself, there is no duty imposed upon a landlord either at common law or by statute to keep common areas free of ice or snow for the safety of tenants. Id. at syllabus. Nevertheless, there are two exceptions to this general rule. First, a landlord may be liable if the tenant can show that the landlord had superior knowledge of the dangerous condition that caused the injury. Id. at 210;DeAmiches at paragraph one of the syllabus. Moreover, a landlord may also be subject to liability if he or she has created a condition substantially more dangerous than would reasonably be expected by the tenant. Lopatkovich v. City of Tiffin (1986),28 Ohio St.3d 204; Debie v. Cochran Pharmacy-Berwick, Inc. (1967),11 Ohio St.2d 38.
Here, appellant does not suggest that appellee had superior knowledge of the icy condition, or for that matter, that appellee even knew of the potentially dangerous situation. The record shows, however, that appellant was well aware of the icy condition of the steps in question. Just approximately fifteen minutes before the fall that injured his knee, appellant had fallen on the same set of stairs while carrying a box. While not seriously injured at that time, clearly, appellant appreciated the danger of ice accumulation on the steps leading to the parking lot.
Furthermore, there is no evidence in the record that appellee was negligent in any way with regards to creating a condition which was substantially more dangerous than could reasonably be expected. Rather, appellant's position is that there was an express agreement between the parties to remove ice and snow from the common areas that rose to the level of a binding contract, even though it was not in the written lease.
At his deposition, appellant admitted that the parties' rental agreement contained no express provision regarding the removal of ice and snow. However, appellant testified that he had called appellee sometime during the second winter after he had moved into the apartment, and that during this conversation, an agent of appellee had told him that it was responsible for the removal of ice and snow from the parking lot. Appellant further testified that on almost every prior occasion, a plowing service had plowed the parking lot after a snowfall. Moreover, with respect to the steps and landings, appellant described how the apartment manager would salt the walkways and common areas of the building. As a result, appellant suggests that appellee made an "express agreement" to assume the duty to remove ice and snow by virtue of the statements of its agents and by having done so on a regular basis in the past.[1]
Appellant maintains that support for his position can be found in Oswald v. Jeraj (1946), 146 Ohio St. 676. In Oswald, a tenant was injured in a fall outside of her apartment building after slipping on ice. The evidence showed that in the past, the landlord had always assumed the responsibility of keeping the approaches to the building clean and free from ice and snow. However, on the day of the accident, there was an accumulation of snow on the sidewalk covering the patch of ice upon which the tenant slipped.
In rendering its decision, the court first noted that at that time there was a question as to whether a landlord owes a duty to his or her tenants to remove naturally accumulating ice and snow from common areas. Oswald at 679. Notwithstanding this uncertainty, however, the court went on to hold that:
 "The owner of an apartment building who reserves possession and control of the common approaches which provide ingress to and egress from such building to and from the public sidewalk and who assumes the duty of keeping such approaches clean and free from ice and snow is required to exercise ordinary care to render such common approaches reasonably safe for use by the tenants." Oswald at paragraph one of the syllabus.
While Oswald has never been expressly overruled, its continued validity for the proposition that there is a per se duty to remove natural accumulations of ice and snow is questionable in light of subsequent Supreme Court of Ohio cases. Where once there was a question regarding a landowner's duty to remove ice and snow, it is now well settled that no such duty exists, absent an express contractual provision to the contrary, or in accordance with one of the previously mentioned exceptions. See, generally,Brinkman v. Ross (1993), 68 Ohio St.3d 82; Sidle v.Humphrey (1968), 13 Ohio St.2d 45; LaCourse, supra;DeAmiches, supra; Debie, supra.
Further, Oswald does not say that if such a duty is assumed, then it imposes strict liability upon the landlord. Instead, it states that any assumed duty must be performed with ordinary care such as to render the area reasonably safe. That holding is not totally out of sync with Brinkman, supra; LaCourse, supra;DeAmiches, supra; Sidle, supra; and Debie, supra. Specifically, a tenant/business invitee is assumed to appreciate that the removal of natural accumulations of snow and ice, in most instances, will still leave an inherently dangerous condition. This, of course, presumes that the actions of the landlord in clearing the area do not make the original condition substantially more dangerous. As a result, we hold that even if a landlord agrees to voluntarily assume a duty to remove accumulations of ice and snow from common areas, that fact standing alone, does not subject him to per se liability for injuries sustained by a tenant who slips and falls. Our holding in the instant matter is obviously subject to the previously discussed and cited exceptions.
The result we reach today rests on several important considerations. First, living in Ohio during the winter obviously has its inherent dangers. Accordingly "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow." Brinkman at 84.
Similar public policy reasons are set out in the previously cited Supreme Court of Ohio cases decided since Oswald. Furthermore, it appears to be a natural and logical progression to extend those arguments to a landlord who has voluntarily assumed the duty of ice and snow removal. However, we find an even more compelling public policy to limit liability for the voluntary assumption of that duty; to wit, why would the law seek to punish landlords who, although not contractually bound to do so, voluntarily agree to remove snow and ice from the common areas?
The Oswald duty of exercising "ordinary care" still exists in the sense that it is reflected in the admonition of the post-Oswald cases: simply stated, a landlord must not aggravate the inherently dangerous condition of natural accumulations or create a dangerous unnatural condition. If we were to adopt the position advocated by appellant, landlords who did absolutely nothing to remove accumulations of ice and snow from their properties would be immune from liability, while landlords who did what they could to assist tenants in coping with Ohio winters would be potentially liable to those who slip and fall despite the landlord's best efforts. Yanda v. Consol. Mgt. Inc. (Aug. 16, 1990), Cuyahoga App. No. 57268, unreported, at 5-6, 1990 Ohio App. LEXIS 3480.
Those landlords who exercise ordinary care in snow and ice removal should be encouraged to do so. Moreover, as aptly noted by the Supreme Court of Ohio in LaCourse, there is no compelling reason to judicially impose a duty on a landlord to remove natural accumulations of ice and snow when, at the same time, a business owner or occupier does not have a similar obligation. See, generally, Collier v. Cappadonna (June 30, 2000), Lake App. No. 99-L-030, unreported, at 6, 2000 Ohio App. LEXIS 2985; Sasse v.Walter (Nov. 19, 1999), Lake App. No. 98-L-157, unreported, at 7-8, 1999 Ohio App. LEXIS 5508; Quayle v. Great Lakes Mall, Inc.
(Nov. 3, 1995), Lake App. No. 95-L-075, unreported, at 5, 1995 Ohio App. LEXIS 4892; Conley v. Shafer-Winans, Inc. (Aug. 27, 1993), Trumbull App. No. 93-T-4836, unreported, at 2, 1993 Ohio App. LEXIS 4158.
Our decision in the case at bar coincides with the current trend in Ohio court's which reflects a refusal to penalize landlords for their reasonable efforts at snow and ice removal. See, generally, McCornell v. Bridges (1997), 124 Ohio App.3d 610,612; Worthan v. Bryan Hous. Ltd., Ptr. (May 1, 1998), Williams App. No. WM-97-028, unreported, at 8, 1998 Ohio App. LEXIS 1842;Strazinsky v. Tri-County Properties, Inc. (May 15, 1997), Cuyahoga App. No. 71015, unreported, at 8, 1997 Ohio App. LEXIS 2109; Brooks v. Lee (Dec. 4, 1995), Butler App. No. CA95-15-091, unreported, at 4, 1995 Ohio App. LEXIS 5319; Yanda at 5-6. But, see, Espurvoa v. Calhoun Invest. Co. (Jan. 23, 1992), Franklin App. No. 91AP-406, unreported, at 4, 1992 Ohio App. LEXIS 246;Rogers v. Ayjay Dev., Inc. (Nov. 14, 1991), Auglaize App. No. 2-91-1, unreported, at 3-6, 1991 Ohio App. LEXIS 5753; Few v.Cobblestone, Inc. (Oct. 17, 1991), Montgomery App. No. 12490, unreported, at 8, 1991 Ohio App. LEXIS 5000.
To reiterate, appellant has not argued that appellee possessed superior knowledge of a dangerous situation, or that it was negligent in creating a condition which was substantially more dangerous than appellant should have expected under the circumstances. Rather, appellant maintains that appellee voluntarily assumed the duty of ice and snow removal by its past gratuitous conduct, and that its failure to do so on the day in question amounted to negligence per se. This court does not recognize or wish to impose such an obligation on a landlord in accordance with the previous discussion. As a result, appellant's sole assignment of error is meritless.
Based on the foregoing analysis, the judgment of the trial court is affirmed.
 _____________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., concurs in judgment only,
NADER, J., concurs.
[1] We note that not all agreements are necessarily contracts. Appellant does not satisfactorily address the fact that the alleged statements and actions of the landlord took placeafter the written lease had been executed. Further, there was no claim of consideration given by the tenant, nor was there any explanation as to how these statements and actions superceded or supplemented a written contract.